## Elcomb Coal Co. v. Coffman.

(Decided Jan. 18, 1938.)

C. B. SPICER for appellant.

GOLDEN, LAY & GOLDEN for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

Coal is taken out of appellant's mine on a tramroad for about 2,000 feet, thence through a 300-foot tunnel to an apparatus which lowers four cars at a time by cable down the mountainside to the tipple. It was the duty of Sam Coffman to attend to the uncoupling of the cars. On July 14, 1933, a train was brought out and stopped preparatory to breaking it up to be sent down the incline.

Coffman alighted from the motorcar and went back to uncouple the fourth and fifth cars. The connection was about 30 feet inside the tunnel. He called to the motorman to "slack ahead." Accordingly, he moved the train forward 4 or 5 feet. Just as he moved it he heard Coffman groan or otherwise show distress. Going into the tunnel he found Coffman lying on his back on top of the fifth car with his legs hanging over it. Coffman said, "My back is broken." He was taken to the hospital, where he died two weeks later. He had some skinned places on his back and complained of his chest and back hurting him.

The roof of the tunnel is supported by cross-beams on upright timbers. There are about 30 inches between the wall and the cars. At the point of the accident the roof of the tunnel is about $3\frac{1}{2}$ feet from the floor and is the lowest place in it. There is a clearance of only 18 to 24 inches between the top of the cars and the beam supporting the roof. The couplings were by hooks and pins, and the customary way of uncoupling the

cars was to stand outside the track or between and on the bumpers of the cars and lift the hook and link. Unless there was some slack in the train this could not be easily done. The tracks slightly incline toward the front of the train, necessitating its movement in order to obtain slack.

Coffman's administratrix sued the coal company to recover damages for his death, placing her cause upon the allegations of negligently failing to provide him a safe place in which to work and moving the train of cars. The defendant's motion for a peremptory instruction being overruled at the close of the plaintiff's evidence, it declined to introduce any proof, and the case was submitted to the jury under instructions about which no complaint is made. The judgment is for $4,500. The grounds of appeal are that there was no evidence nor that the death of the employee was the proximate result of negligence. It is also submitted that errors were committed in the admission of certain evidence.

Since the defendant had not elected to conduct its operations under the terms of the Workmen's Compensation Act, Kentucky Statutes, sec. 4880 et seq., the defense of assumed risk of working in an unsafe place was not available. Section 4960, Kentucky Statutes; Southern-Harlan Coal Company v. Gallaier, 240 Ky. 106, 41 S. W. (2d) 661. Therefore, the issue was confined to one of negligence and its proximate result.

The cause of the decedent's injury is manifest. He was required to perform his dangerous duties of uncoupling the cars—coupled by a method long ago outlawed for railroads, 45 U. S. C. A. sec. 8; 51 C. J. 1028, in a very close and restricted space, with a cross-beam below the level of the roof of the tunnel, leaving only 2 feet or less space above the car. The circumstances leave no room for doubt that this beam scraped and crushed the man when the train moved forward so that he could unfasten the coupling link or hook. It seems, to us that the mere description of the conditions, considering the nature of the employee's work and the manner in which he was required to do, is enough to manifest a violation of the duty of the master to provide a reasonably safe place for the performance of his labors. Not unlike the case is Wilder's Adm'r v.

Southern Mining Company, 265 Ky. 219, 96 S. W. (2d) 436. It seems sufficient authority for holding that the court properly submitted to the jury the issue of negligence and its causal connection.

The appellant suggests that it is not shown what caused the death of its employee. The evidence might have been more satisfactory. But we have his outcry, and injury; the scraped places on the man's back; his removal to the company's hospital, where he was attended by the owner of the mine as a physician (and he does not testify); his complaining of pains in his chest and side, and his growing gradually worse until his death two weeks later in the hospital. There is also in the record the statement of a witness that he had died from the injury there received, to which no objection was made. We think these circumstances sufficient to take the case to the jury on that question.

The widow was permitted to testify as to the decedent's age, his general good health and habits, and as to his wounds and suffering. Though she was not competent as a witness concerning the things she had learned by reason of the marriage relation, under section 606, Civil Code of Practice, yet, as her material testimony was the same as that given by the decedent's daughter and others, we consider the error not prejudicial.

Another point is made that it was error to permit the operator of the motor to testify that when he got to Coffman he said, "My back is broken." The witness had immediately gone only 25 or 30 feet when he heard the man groan as he moved the train, so that the exclamation may well be regarded as of the res gestæ. Of course, literally, the statement is one of opinion or conclusion and of the nature which requires technical, surgical examination or expert opinion. But the jury probably regarded it, as do we, that is, not as proof of his particular injury, but as the idiomatic exclamation, in effect, that he was badly hurt. As such, even if technically incompetent, it could not have been prejudicial. Cf. Stewart v. Commonwealth, 235 Ky. 670, 32 S. W. (2d) 29.

The judgment is affirmed.