## Cloversplint Coal Co. v. Blair.

May 30, 1941.

J. C. Baker for appellant.

John L. Williams for appellee.

Opinion of the Court by Judge Thomas—Affirming.

On and for sometime prior to September 21, 1938, Orville Blair (22 years of age) and his brother, Dexter Blair (19 years of age) were employes of the appellant and defendant below, Cloversplint Coal Company, as miners in extracting coal from a mine owned and operated by defendant for that purpose in Harlan County. The two brothers had been working together in the same room of the mine prior to the accident resulting in the death of the elder one on the early morning of the date indicated, which was produced by the falling of a large rock from the ceiling where the deceased employe was at work, followed by his instantaneous death. The falling rock was from six to eight inches thick; six feet

wide, and seven or eight feet long. It fell on a coal car which decedent was supposed to be loading and beside of which he was working, which work consisted in putting into the car accumulations of slate that had fallen down on the floor in the process of extracting coal and which is referred to in the record as "draw slate" or "draw rock", and which the evidence in the case differentiates from ceiling rock or slate that was released and caused to fall by the process of mining, and which is referred to as "ceiling rock," and should be removed or protected only for the purposes of safety.

The assistant mine foreman, or superintendent, at about the time of the commencement of the day's work by the deceased and his brother, directed the latter to another part of the mine to perform some labor which the foreman or superintendent thought was necessary to be done at the time, and the deceased was thereby left alone in the fatal room, which continued until his death some hour or more after his brother had departed under the directions given him as indicated. A witness who worked in an adjoining room of the mine, with only a thin wall separating them, heard the noise of the fall of the rock and investigation revealed the fatal consequences.

Defendant was eligible to operate under our Workmen's Compensation Act, Ky. St. sec. 4880 et seq., but it declined to do so. The father of deceased was appointed and qualified as his administrator and as plaintiff below filed this action against defendant in the Harlan circuit court to recover damages sustained by the estate of his deceased son, which the petition fixed at the sum of $25,000. The petition charged negligence on the part of the defendant in failing to furnish decedent a safe place in which to perform his work, and in failing to comply with a number of duties imposed by various sections of our statutes, and particularly those incorporated in section 2739-42 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes relating to the duties of foremen or superintendents of mining operations. It was furthermore alleged that the same officer or agent of defendant assured the deceased of the safety of the place and directed him to continue the work he was then doing, which he was thereby induced to believe and continued working at his position. Likewise, it was alleged that deceased and his brother for some days

past had requested propping timbers to be furnished with which to brace and secure the roof of the particular locality of the mine, and which had been promised but had not been furnished.

The answer denied the averments of the petition with a plea of contributory negligence as the *sole* cause of decendent's death, which in turn was denied by reply. A trial resulted in a verdict for plaintiff in the sum of $2,000, which the court declined to set aside on a motion for a new trial, and from it and the judgment pronounced thereon defendant prosecutes this appeal, urging as the *sole* ground for a reversal that the verdict is not only flagrantly against the evidence, but that under our recent rule as declared in the case of Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. (2d) 877, 883, defendant's motion for a peremptory instruction in its favor should have been given. That opinion did nothing more than to discard the rule that had theretofore been recognized and applied by this court known as the "scintilla rule," and which, in substance, was that if there was any evidence tending to establish the contention made by a litigant it became the duty of the court to submit the contested issue to the jury, although a verdict based on the scintilla of proof would be set aside as being flagrantly against the evidence, and which character of verdict, as defined many times by this court, was one so unsupported by proof and so overwhelmingly contradicted as to force the conclusion that it was the result of passion and prejudice on the part of the jury. Therefore, if the verdict herein attacked was one so circumstanced, then counsel for appellant is correct in his insistence that under the Nugent opinion the court erred in not sustaining his motion for a peremptory instruction in favor of his client.

Our inquiry, therefore, is confined to a consideration of the sole question of—whether under the testimony adduced the verdict in this case was of the nature and kind calling for the application of the remodeled rule laid down in the Nugent opinion? But before taking up that task it should be stated that the Nugent opinion did not modify or qualify what was theretofore classified as a verdict "flagrantly against the evidence." In numerous opinions theretofore rendered by us we repeatedly said that a verdict may not be classified as *flagrantly* against the evidence

merely because it was not supported by the testimony of as many witnesses as those testifying to the contrary; nor could it be so classified when supported by sufficient testimony to carry conviction, although such testimony was contradicted by what this court might think was a preponderance of the proof heard at the trial but not so much so as to produce flagrancy in the finding. With such considerations in mind we now approach our task of determining the sole question submitted for our decision.

The superintendent or officer referred to testified that he was in or at the room where the fatal accident occurred on the day before its happening, and likewise there at a comparatively early hour the next morning when he conversed with the two brothers, and on the latter occasion directed the younger one to work, at least that day, at a different place. He denies any complaint about props but he does say that he discovered the dangerous condition of the roof of the mine at the place from which the rock fell by testing it, followed by a "drummy" sound, and that he then and there directed the deceased to take down the rock and instructed him how it should be done—after which he left and did not return until after deceased was killed. That witness also stated that the instructions he gave were to the deceased alone, since his brother had left the mine to work in the newly directed place, but the brother testified that he remained there until after the officer had left on that occasion and heard all of the directions he gave to his deceased brother, and that he did not direct deceased to take down the rock or instruct him how it should be done, but on the contrary assured him that the roof was at least temporarily safe and for him to finish cleaning up the room, as he was then engaged, before leaving it, and that props would be sent into the mine with which to prop the roof, or that other steps would be taken to render it safe, including the removal of the rock by the proper employes specially engaged for that purpose, if found necessary.

It is true that the testimony of the brother was contradicted in some particulars by a written affidavit he made some days after the accident, but he stated that he could neither read nor write—except to write his name—and that some of the statements contained in the affidavit were untrue and were not read to him at

the time. However, it must be said that his testimony with reference to his affidavit is greatly impaired by its incredibility and his manner of testifying. But, nevertheless, there were other witnesses in the case who testified that there were no props, and who also narrated statements from defendant's officer showing that he was acquainted with the condition of the roof at the place of the accident and he himself admits that he made no effort to remove the dangerous rock, except to direct the deceased to take it down. There is likewise contradiction as to whether or not it was the duty of a mere miner to perform such operations with reference to what the witnesses refer as "ceiling" or "top rock" as contrasted with "draw slate" or "draw rock."

The section of the statute supra defines the duties of the mine foreman or superintendent and his assistants, among which are to see "that the workmen are provided with sufficient props * * * which shall be delivered to the working place when requisitioned by the workmen." Also that he shall visit each working place at least once each day and direct the miners so that each and every working place shall be secured by props or timbers when necessary, and "Should the mine foreman or his assistant find a place to be in a dangerous condition, they shall not leave the place until it is made safe, or remove the persons working therein until the place is made safe by some competent person designated for that purpose." Also, that "The mine foreman shall give proper attention to the removal of all dangers reported to him by his assistants, the fire boss, *or* any *other* person working in the mine, and in case it is impracticable to remove the danger at once, he shall notify every person whose safety is menaced thereby to remain away from the portion where the dangerous condition exists."

The record makes it perfectly plain that such duties were not observed in this case—not even substantially, much less literally, unless the superintendent or foreman had the right to designate the deceased, who appears to have been a mere miner, to perform the duty of removing the rock—which was known to be loose—and that it was the duty of the deceased to carry out such instructions. As we have said, the testimony in the case is in conflict on that issue and the jury

necessarily found against defendant's contention with respect thereto.

Two late cases sustaining the right of·the employe to .continue his work and to not abandon it in circumstances practically on all-fours with this one are Elcomb Coal Company v.. Coffman, 272 Ky. 93, 113 S. W. (2d) 847, and Harlan Ridgeway Coal Company v. Jackson, 278 Ky. 767, 129 S. W. (2d) 585. The latter one also points out that under section 4960 of our statutes supra (being a part of our Workmen's Compensation Act), the defenses of contributory negligence and assumed risk are neither of them available in a common law action against an employer eligible to operate under the Compensation Act but who has not accepted it, unless such defenses are the sole causes of the injuries sustained. Therefore, if it could be said that decedent's action in remaining at his place of work was sufficient to create an assumption of risk by him, yet defendant may not avail itself of such conduct on his part, unless it was the sole cause of his death by the later happening accident. Whatever may be the rule as applicable to other circumstances—the determination of none of which is here attempted—it is most certainly true that the assumption of the risk by the employe after being assured by the foreman of the safety of the place could not be said to be the sole cause of an accident that might happen to the former, unless, perhaps, the danger was so apparent that no ordinarily prudent person would disregard it. We are clearly convinced that no such condition existed in this case, and for which reason we can discover no ground to sustain counsel in the only argument made by him for a reversal of the judgment.

Wherefore, it is affirmed.