## Three Point Coal Co. v. Moser et al.

Dec. 12, 1944.

H. C. Gillis and Robert L. Smith for appellant.

Doyle & Doyle for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

On August 6, 1942, Roy Moser, a coal miner, 51 years of age, filed application with the Compensation Board, claiming that on August 13, 1941, while loading coal in appellant's mine, he had injured his right side and "suffered a rupture and hernia on right of body." It was agreed that at the time parties were operating under our Compensation law, KRS 342.001 et seq., and the average weekly wage of claimant was sufficient to authorize maximum compensation, if any.

Following a hearing the referee held that there was not sufficient evidence upon which the Board could award compensation. He limited the question before the Board to whether or not the applicant had suffered hernia, and found that he had not. Subject to appeal to the full Board the claim was dismissed. A motion for full Board review was sustained, whereupon the Board concluded "that the plaintiff had sustained an injury while in employment, and as implied above is of the opinion that it is akin to hernia; that the condition is permanent, but in view of the evidence as to his work history since the accident we conclude that 50 per cent is a fair estimate of his disability. We cannot agree

with counsel for defendant that the plaintiff's petition or application is not sufficient to entitle him to relief." The Board awarded compensation at the rate of $6.00 per week for a period of 335 weeks.

On review the circuit court confirmed the Board's finding, and appeal was granted. While other complaints were set up in the petition for review, the contention here is that there is not sufficient competent substantial evidence to sustain the Board's finding that the appellee has a permanent disability, or sustained 50 per cent permanent disability, or sustained an injury in the course of employment. The argument is that such competent evidence as was introduced was not of that substantial character as is ordinarily required to support an award, relying upon Kentucky Utilities Co. v. Hammons, 273 Ky. 375, 116 S. W. 2d 298; American Rolling Mills v. Pack, 278, Ky. 175, 128 S. W. 2d 187, both distinguished in American Rolling Mill Co. v. Stevens, 290 Ky. 16, 160 S. W. 2d 355, 145 A. L. R., 1256.

Applicant testified that on the day of his claimed injury he pushed an empty car in place for loading, and in doing so his right foot slipped: "I felt a pain sticking me in the right side. I stopped. It seemed to get numb, and I didn't think it hurt much. I loaded up a car * * * and went home. After I had supper and sat down and it began to get sore. I looked at it and there was a knot on my side. I was sore the next morning and didn't go to work. I went to the doctor the next day. * * * The doctor taken me up for a strained kidney; blistered me all over, and taken the hide all off. After that he sent me back, and I couldn't do anything; that knot was still on my side. They put a truss on me next, the coal company." He said he had never been hurt like that before, and had lost no time in thirty or more years of mine work, except a short while for some minor trouble. He said "it hurts me continuously, specially of a morning. I can't lift any more. I have pains and it strains me too much; I can't get up with a load; I can handle a little coal on my knees. I wear my truss to work all the time." The second day following his injury he went to work, but came back home. He guessed he was off ten or twelve days, but "worked practically all the year loading coal." and quit because they put him in a "water hole" to work. He went to work for another company three weeks after leaving appellant's employ.

Appellant apparently was alone when he was pushing the car, so his is the only testimony bearing on the manner in which he received injury. His brother and George Arvin, fellow miners, saw him the next morning when he was changing his clothes, or later when taking baths; they say he showed them a "pretty good size knot" on his right side, and he seemed to be suffering "pretty bad." They say he was a good steady worker, in good health, and they had never seen the knot prior to the day of the alleged injury. The wife testified that prior to August 13th Moser was in good health, and had no knot on his side. The morning after the 13th the knot showed up, and "he couldn't go to work; couldn't hardly walk; his side was puffed up." She went with him to Dr. Williams who taped him up; the doctor said, "Yes, you have a tear there, and it is unusually high," and suggested that Moser see the company about getting a truss. She went with him to the superintendent, who directed him to go to Mr. Gross to see about getting it, about the procurement of which Mr. Gross was uncertain.

Appellant contends that the testimony of the wife was incompetent under provisions of Civil Code of Practice sec. 606. Her testimony insofar as material, was the same as given by other witnesses, and though it may have been incompetent under the Code rule, it was not prejudicial. Elcomb Coal Co. v. Coffman, 272 Ky. 93, 113 S. W. 2d 847.

Shortly after the accident Moser reported to Dr. Williams, at the time substituting for Dr. Burkhart, the company doctor. What transpired on this visit has been recited briefly above, although the wife, without objection, said that Dr. Williams and Dr. Burkhart (later) suggested a rupture. Dr. Burkhart examined Moser before he began work for appellant, and no previous injury was shown; also "a week or may be two weeks," after his claim of injury. He did not find any evidence of hernia. He found no reason for pain in the locality, but said that if he had a lot of pain he could wear a truss, "if he felt it would help him." Later he and Dr. Cawood told him to discard the truss. Dr. Burkhart said: "In my opinion the man actually thinks he has a rupture and can't bear the thought of not having that protected." On cross-examination he said that Dr. Williams had told him he had taped Moser on account of an

injured kidney. He also testified that there were various types of hernia, and had noted some high up in the abdomen, distinguisded from inguinal hernia, which could be repaired with good results.

Dr. Cawood agreed with Dr. Burkhart, and both thought Moser's symptoms were subjective. Dr. Hamel examined Moser in July 1942 when he applied for work. He found no hernia, nor enlargement that might be considered a hernia. Moser had answered on his card that he had no previous injury. On cross-examination he said that while his examination was for inguinal hernia, if there was a high abdominal hernia there was possibility it might be overlooked.

By order of the Board Moser reported to Dr. Acuff of Knoxville in May 1943. After history by Moser he gave him a thorough examination, which he said showed subjective symptoms, such as pain in the region of his right hip bone, but too high for hernia. "I was not able to get a mass protrusion through the inguinal canal, or a protrusion of the viscus, which is the true symptom of hernia. He had a relaxed abdominal muscle on the right side, and when he strained it it was a little more prominent," though he found no opening through the abdominal wall. In answer to the question, "Is it your opinion he does not have a hernia?" he said: "I do not think he has a true hernia; there is a relaxation of the muscle on the right side which is higher than the ordinary hernia protrudes, it might be caused by lifting or straining." The doctor said that he could not find any clinical disability, "but the man says he suffers pain. If I examined him without his history I could not find any disability or hernia." Dr. Acuff on cross-examination said that he did not think the accident caused hernia, but "I would not say he does not suffer; he could have an injury to the muscles and not suffer from hernia," and that an injury to the muscles is rather difficult to repair, but in time there should be recovery.

Dr. Foley examined Moser some two or three times, first in August 1942. He found no inguinal hernia, but what he called a rupture of the abdominal muscles, angling downward from the ilium. This witness agreed that "this was not an ordinary inguinal hernia, but more of a rupture which could be caused by heavy lifting, pushing of a coal car, or unusual strain." He thought that Moser was not totally disabled from doing work,

but heavy straining work was liable to complete the hernia, with possibility of strangulation. Asked the direct question as to disability, he answered: "I don't think it safe for him to do heavy manual labor. I think he is 100 per cent disabled for heavy manual labor, but there is selective work he can do." On cross-examination he said that he had Moser make forceful abdominal pressure and there was a buldge of the rupture. He admitted that ruptures of the character he found were rare. The foregoing is the substance of the proof upon which the Board awarded on a finding of partial permanent disability of 50 per cent.

As we read the record it seems to us that appellee conducted its defense on the idea that claimant was not suffering from a true hernia, and that having well developed that defense no award should have been made. This conclusion loses sight of the fact that the Board did not base its award on the ground of such a hernia, the usual inguinal hernia, described by the doctors, but that there was a compensable injury, something akin to or bordering on hernia. That there may be and is a hernia not designated as true hernia, is made plain from Dr. Acuff's testimony. It may be gathered from his proof that there was a rupture, or what is sometimes called an incomplete or concealed hernia, one not perceptible to palpation. This would, if caused by an accident in the course of employment, constitute a compensable injury.

However, the chief argument is that there is no competent, substantial evidence to sustain the Board's finding that appellant sustained an injury, or that he has suffered a 50 per cent disability or a permanent disability. Much of this argument is bottomed on the ground that the only evidence of injury was that of Moser who described how the injury was received. This is answered by reference to Lawrence Leather Co. v. Barnhill, 249 Ky. 437, 61 S. W. 2d 1. While he said he could do no heavy work by way of lifting, he contradicted himself by admitting that he had worked for appellant the greater part of the year following the injury, and later for the Chevrolet mines in manual work. Also that his testimony was to be discredited because he concealed his alleged injury from Dr. Hamel when he applied to Chevrolet for work, as he says "because I had to do something to make a living." It is unecessary for us

to comment on this point, as the weight and measurement of the evidence was a matter for the consideration of the Board. The evidence was competent. We can say that we are struck with the frankness with which witness answered questions to his disadvantage. Also with the obvious fact that while claiming to be disabled he continued to work; he was not a malingerer.

Counsel criticizes the testimony of Dr. Foley to whom Moser went in an adjoining county, not for treatment but ostensibly for the purpose of making of him a favorable witness. It is suggested that since Dr. Foley was an aged man it would take but little suggestion to elicit from him a most favorable diagnosis and opinion. As it appeared in the record, the Board had the right to consider and weigh it, and while it appears that his testimony as to the existence of true hernia was in accord, he did find an injury which is compensable under the law. The Board properly discounted Dr. Foley's testimony as to the per cent of permanent disability, and was justified in so doing by the showing of Moser himself that he had been, with the exceptions of brief periods, engaged in remunerative manual labor. This brings us to the argument that there was lack of substantial proof that there was as much as a 50 per cent and permanent disability. The proof on the latter point is vague, but appellees did nothing more than to show by proof that there was no disability whatever; no compensable injury. If Dr. Foley's testimony should be eliminated, the testimony of Dr. Acuff is sufficient to show that there was some injury, which if caused by an accident in the course of employment, is compensable.

The only testimony as to the extent of disability, aside from that of Dr. Foley, is Moser's, he testifying that he was not able to do, or was doing the same class of work that he had done before the injury, though doing manual labor, both in appellant's mines (until they put him to work in a water hole) and for Chevrolet, where he was doing labor of a different character, laying track. His pay after he got hurt was in an average of one-half of his former pay. This was not denied, except in a way by the superintendent who testified as to what the records would show, without referenece to the records.

The Board found as a matter of law that claimant's application was suffcient to entitle him to relief; that in their treatment of the case it was not confined to con-

sideration of the claim based on true hernia. In this they were correct, because the applicant is not held to an absolutely correct statement of the result of his injury. We must admit that the proof upon which the Board made its finding, more as to quantum of disability than as to the injury or the accident, is not of the most satisfactory character, yet we are bound by our well recognized rule, to the effect that if there is any evidence of a substantial probative nature tending to support the Board's conclusion, this court is without authority to substitute its finding of fact for that of the Board. Utley v. Pence, 295 Ky. 673, 175 S. W. 2d 372; Frazier v. Kentucky-Jellico Coal Co., 296 Ky. 777, 178 S. W. 2d 601, hence the judgment must be and is affirmed.

The whole court, excepting Judge Harris, sitting.