Fred Thomas PRUITT, Appellant,

v.

BUGG BROTHERS et al., Appellees.

Supreme Court of Kentucky.

Feb. 18, 1977.

Chas. A. Williams & Associates, Paducah, for appellant.

John T. Carneal, George R. Effinger, Boehl, Stopher, Graves & Deindoerfer, Paducah, for appellee Bugg Brothers.

STERNBERG, Justice.

Fred Thomas Pruitt appeals from an order of the Workmen's Compensation Board. The Board found claimant to be permanently partially disabled to the extent of 60% as a result of injuries he received on June 5, 1972. It was stipulated by the parties that the only issue is the extent and duration of the disability, if any.

Appellant is 63 years of age (b. 4/24/11), married, has a third-grade education, does not read well enough to read the newspapers and, during his work life, has done only manual, unskilled labor.

Appellant was mashed between two trucks, resulting in injuries to his arms, shoulders and chest. He was hospitalized on two occasions and caused to take extensive periods of home bed rest. He returned to work, but was physically unable to do even menial tasks by reason of pains in his arms, legs, shoulders, chest and head, and numbness in his fingers.

Five doctors testified. Four of them actually examined claimant; the other doctor did not talk with or examine claimant. He testified only from a personal reading of x-rays and a myelogram of claimant and from a telephone conversation with the doctor who made the myelogram. The medical testimony delineates the extent of claimant's disability as ranging from total disability to 5–15% disability to the body as a whole. Pruitt's neighbor portrays him as being unable to do any work, whereas, prior to the injuries the two of them traded farm work. A professor of rehabilitation at the Rehabilitation Institute of Southern Illinois

University, who made a job-availability study of the Paducah, Kentucky, area, opined that there is very little opportunity in that area for the type of employment claimant is capable of doing.

The first question presented on this appeal is:

"Whether, as a matter of law, a sixty-three year old illiterate who has never done anything but hard labor is less than 100% disabled when all the medical evidence substantiates that he is no longer capable of heavy work?"

 Counsel for appellant would have this court lay down an arbitrary rule that in all instances a 63-year-old illiterate person, who has never done anything but hard labor, is totally disabled when all of the medical evidence substantiates that he is no longer capable of doing heavy work. This, we cannot do. Each case must stand on its own bottom. Workmen's compensation benefits are paid on occupational disability, not functional disability, and it is the responsibility of the Board to translate the percentage of functional disability into the percentage of occupational disability. The extent of occupational disability is not necessarily the same as the extent of functional disability. If there is substantial evidence to support the Board's findings, this court is without authority to substitute its finding for that of the Board. *Three Point Coal Co. v. Moser*, 298 Ky. 868, 184 S.W.2d 242 (1944).

Dr. John D. Noonan, a neurosurgeon, testified that he examined claimant in February 1973, and at that time he found claimant unable to work, and the doctor was of the opinion that the disability would continue. He hospitalized claimant for a myelogram, which he read as normal, in that it did not show any evidence of spinal-cord compression. The doctor was not, however, able to state the cause of claimant's disability. Dr. Noonan was reputed to have later changed his evaluation of the myelogram.

Dr. Donald C. Haugh, a surgeon, examined Pruitt at the time of his admission to the hospital, and he continued treating him until June 16, 1973. As a result of his examination and of being informed by Dr. Noonan that the myelogram was normal, Dr. Haugh gave as his opinion that Pruitt's complaints result from the injuries he received on June 5, 1972. The doctor was of the opinion that claimant would not be able to do heavy work in the future, although he thought claimant could return to work where he is not required to lift objects weighing over 50 pounds. He evaluated claimant as having a 15% occupational disability.

Dr. Joseph Vance, an orthopedic surgeon, examined claimant on May 19, 1975. After completing his examination, he also talked with Dr. Noonan relative to his treatment of claimant. Dr. Noonan advised Dr. Vance that claimant had some evidence of mild to moderate degree of neurological deficit in his lower extremities. Dr. Vance attributed claimant's disability to the 1972 trauma and rated claimant 5% to 15% disabled.

Dr. Carey W. Campbell, a neurosurgeon, examined Pruitt on June 9, 1975. He also viewed the x-rays and myelogram picture of claimant, which he interpreted as showing signs of a ruptured lumbar disc. From his personal examination and with the benefit of his reading of the x-rays and myelogram, he was of he opinion that Pruitt is totally disabled, subject, however, to the condition being alleviated by surgery.

Dr. Willard F. Chumley, an associate radiologist, did not examine claimant. He testified as to the proper reading of the x-rays and the myelogram film of claimant. He interpreted these as a finding in the lumbar region compatible with the presence of a herniated intervertebral disc.

 The difficulty with appellant's position is that all of the medical evidence does not substantiate his premise that he is no longer able to do heavy work. Counsel for appellant may argue that the medical evidence will sustain a finding of permanent total disability. However, where medical testimony is concerned and that testimony is conflicting, as is demonstrated here, the question of who to believe is one exclusively for the Board. *Yocom v. Gentry*, Ky., 535 S.W.2d 850 (1976).

The question next presented by appellant is:

"Whether the trier of fact's conclusion can stand when it is supported only by disputed expert opinion which is premised on a mistaken fact assumption?"

In support of this issue appellant argues that Doctors Haugh and Vance gave their opinions under a mistaken assumption that the myelogram test was negative, when in fact it was positive. The evidence in this respect is not clear and convincing. Dr. Chumley read the myelogram as reflecting findings which are characteristic of a disc defect in the lumbar region, and he expressed surprise that Dr. Noonan may have interpreted the myelogram as perfectly normal. Dr. Haugh testified that Dr. Noonan did the myelogram and, in arriving at his evaluation and in making his findings, he used the report of the myelogram furnished by Dr. Noonan. This testimony is indicative of the confusion and misunderstanding which often arises over the proper interpretation of x-rays or myelogram films. Doctors read and evaluate these pictures differently. In the event there was confusion over Dr. Noonan's evaluation and interpretation of the myelogram, it could have been clarified by retaking the doctor's deposition, which was not done. Counsel for appellant charges that Dr. Noonan must have been mistaken either when he told Dr. Chumley that the myelogram showed a ruptured disc or when he told Doctors Vance and Haugh that it was perfectly normal. The uncertainty manifest by counsel for appellant would properly address itself to the weight to be given to the doctor's testimony. In *McCloud v. Beth-Elkhorn Corporation*, Ky., 514 S.W.2d 46 (1974), this court said that it is within the province of the Board to determine the quality, character and substance of the testimony, and that where there is conflicting evidence as to facts, the Board's findings would not be disturbed.

The judgment is affirmed.

All concur, except CLAYTON, J., who did not sit.