Jack Richard HUSH et al., Movants,

v.

James ABRAMS d/b/a Abrams
Sanitation, Respondent.

Supreme Court of Kentucky.

June 12, 1979.

Garis L. Pruitt, Jerry P. Vincent, Ashland, for movant Hush.

Ralph T. McDermott, David O. Welch, Ashland, for respondent Abrams.

STERNBERG, Justice.

This is a workmen's compensation case. Movant, Jack Richard Hush, who was a well and active male, 25 years of age, sustained a work-related fracture of the neck of the right femur (the big bone in the thigh) when he fell from a truck on June 18, 1974. The Board awarded him occupational disability of 20% "for so long as his disability continues." The employer appealed to the Greenup Circuit Court, where the award of the Board was affirmed. The Court of Appeals of Kentucky reversed and "remanded to the Greenup Circuit Court with directions to enter a new judgment and order directing the Workmen's Compensation Board to delete that portion of its award allowing the establishment of an indeterminate period of partial occupational disability benefits for appellee." This court granted discretionary review on January 30, 1979, and reverses.

The parties stipulated to the Board that, "the only question presented for the Board is to the extent, if any, of the Plaintiff's permanent disability arising out of the occurrence of June 18, 1974." Counsel for

Hush states, "The issue is whether there was substantial evidence to support the Workmen's Compensation Board," and answers in the affirmative. Counsel for respondent argues that there is not substantial evidence to support the opinion and award of the Board. The opinion of the Court of Appeals states, "The sole question presented in this appeal is whether the decision of the Board is supported by substantial evidence." The only issue before this court, as was before the Court of Appeals, is whether the decision of the Board is supported by substantial evidence.

The only issue being one of fact, we need to analyze the evidence and measure it by the substantial-evidence test. In *Holman Enterprise Tobacco Warehouse v. Carter*, Ky., 536 S.W.2d 461 (1976), we said:

"'* * * It is the general rule that any finding of the Board on a question of fact will not be set aside on an appeal to either the circuit court or this court if, as is the situation here, there is any substantial evidence of probative value to support it.'"

When Hush fell from the truck he hit his hip, the back of his neck and his head on the concrete street below. He was immediately taken to a hospital where he was treated for a subcapital fracture of his right hip. On June 21, 1974, the third day after his injury, Dr. William C. Roland, an orthopedic surgeon, pinned Hush's hip in a surgical procedure. He was discharged from the hospital on July 3, 1974, and was seen by Dr. Roland on two subsequent occasions, August 15 and October 18, 1974. He was not seen or examined thereafter by Dr. Roland. When the doctor gave his deposition, he testified that Hush was temporarily totally disabled from June 18, 1974 to October 18, 1974, but that he expected him to have full recovery by May 1975. The doctor suggested that there was a possibility of post-operative complications associated with this type of treatment. As a matter of fact, Dr. Roland said there would be scar tissue left from the break either with or without surgery. Since Dr. Roland had not seen Hush since his last visit in October

1974, and his deposition was not taken until September 7, 1976, the doctor admitted that he could not give an up-to-date evaluation, but he did evaluate Hush's condition at the time he last saw him as 10% temporary functional disability to the lower right extremity and 5% to the body as a whole.

Hush consulted Dr. Jaldir Lobo, a neurosurgeon, for headaches and forgetfulness. Dr. Lobo examined him on May 25, 1976, and found no functional impairment due to the June 18, 1974, trauma from a neurological standpoint. He found Hush's complaints to be subjective and incapable of justification on an objective basis. In other words, the doctor could not find any present physical condition which would evidence or cause to bring about a headache or forgetfulness. He observed Hush at the time of his examination and saw him walk with a limp in his right leg; however, he did not feel qualified to assess orthopedic disability. The doctor did not testify that Hush was not actually experiencing the pain of which he complains.

Hush testified that since his stint in the hospital he has had problems trying to remember things that occurred before his injury; that he has pain in his neck that radiates down the right side of his neck to his shoulder and thence to his right hip; and that medication is required for relief. He said that he had none of the complaints prior to the accident. Hush stated that by reason of the pain he suffers, he is unable to hold full-time employment. He held a janitorial job for about six months in 1975, but had to give it up by reason of the pain in his hip. Prior to his injury, Hush was able to play basketball, to bowl, to mow the lawn, to mop floors, and to do other physical work, none of which he can do now without suffering severe pain.

Mrs. Juanita Frazier, Hush's aunt, with whom he has lived since 1972, supported Hush's testimony of his inability to properly function.

Medical testimony must be clear and convincing. The testimony of Dr. Roland was not currently reliable since at the time his deposition was taken he had not seen Hush

for two years. His testimony related only to the time during which Hush was under his care. Any testimony by Dr. Roland relating to Hush's physical condition as it existed subsequent to the time of his treatment is wholly speculative and conjectural.

As to the testimony of Dr. Lobo, it could be evaluated as supportive of Hush's complaints of pain and forgetfulness. The sum and substance of his testimony is that he could find no present condition which would be conducive of pain. It is not that Hush did not actually suffer from the pain of which he complains, but that the doctor could find nothing which would suggest the presence of pain, even though Hush walked with a limp in his right leg.

The testimony of Hush, supported by the testimony of his aunt, clearly and without equivocation delineated a change for the worse in his physical condition subsequent to his injury and surgery.

█ If there is any evidence of a substantial probative nature tending to support the Board's conclusions, this court is without authority to substitute its findings of fact for those of the Board. *Three Point Coal Co. v. Moser,* 298 Ky. 868, 184 S.W.2d 242 (1944); *Armco Steel Corporation v. Mullins,* Ky., 501 S.W.2d 261 (1973).

In the instant case, what we have is lay testimony descriptive of and supportive of a permanent disability, together with medical testimony that is not in conflict with lay testimony. The Court of Appeals concluded that the Board based its opinion and award on lay evidence as opposed to medical testimony. To this premise the Court of Appeals applied *Walker v. Porter Product Finishers,* Ky., 505 S.W.2d 178 (1974), and concluded that the decision of the Board was not supported by substantial evidence. In *Walker* the Workmen's Compensation Board granted an award for so long as Walker remained disabled (open-end award), not to exceed 425 weeks. On appeal to the Jefferson Circuit Court, the open-end portion of the award was reversed. In doing so, the circuit judge wrote:

"'* * * that this action be and hereby is remanded to the Board for a determination of plaintiff's disability based upon the medical evidence * * *.'"

This court said:

"The circuit court has misapplied the law; we are unaware of any requirement that the Board need consider only medical evidence in making its determination. As we have stated before:

"'* * * as the basis for an award * * * there must be some evidence showing to what extent the claimant is "disabled." This is not always exclusively a matter of medical testimony * * *. In many cases, particularly those involving internal injuries, medical evidence may be the only competent evidence to prove the actual bodily condition of the employe * * *; but once the bodily condition has been established, lay testimony may be competent on the question of the extent of the *disability* that has resulted from the bodily condition.'"

█ In our analysis of the evidence in the subject action, we are influenced by the fact that Dr. Roland found that Hush was totally disabled from June 18, 1974, to October 18, 1974, and that as of October 18 Hush was suffering a 10% disability to his right lower extremity and a 5% disability to the body as a whole. He was on crutches for over one year. There was a possibility that Hush might fully recover, but there is no medical testimony that he has recovered or that his condition has changed for the better. As a matter of fact, the lay testimony is that Hush's condition has changed for the worse. As to the testimony of Dr. Lobo, even though he witnessed Hush's walking with a limp, he did not find that Hush does not actually suffer the pains about which he has complained. The medical evidence clearly and unequivocally shows the actual bodily condition. The lay testimony is competent on the question of the extent of disability which has resulted from the bodily condition. In *City of Olive Hill v. Parsons,* 306 Ky. 83, 206 S.W.2d 41 (1947), we wrote:

"Appellant also raises a question concerning the extent and duration of appellee's disability. It suggests that the testimony of the employee without any medical evidence is not sufficient to support a finding of permanent disability. Disability is a question of fact to be determined by the Board, and we know of no rule which requires the employee to produce medical proof. Appellee himself testified at length with respect to his condition and his inability to obtain regular employment. He stated that since March 1943 he had worked about one-fourth of the time, and that was principally light work. There seems to be no question that he is suffering from a recurrence of the hernia, and is to some extent disabled. A review of all the evidence in the case convinces us that it was sufficient as a basis for the Board's finding of seventy-five percent partial permanent disability."

Prior to his injury Hush could regularly engage in hard, common labor and actively take part in physical sports such as basketball and bowling. He could help around the house by mopping the floors for his aunt and by cutting the grass and raking the leaves. After his injury he could do none of these by reason of pain. He frequently has real bad headaches, especially when he stoops over. Subsequent to his injury he has been able only to find employment for a period of a few months and was caused to quit that by reason of pain. Hush is a high school graduate and has had one year of vocational training. He weighed 180 pounds prior to his injury, but has fallen off to 130. Also, since his injury he is nervous, makes unusual jerking movements of his neck, and cannot think clearly or remember things that happened before he was injured.

There is medical testimony from which the Board could have concluded that Hush did suffer from the trauma of June 18, 1974. Having reached that conclusion, the Board could then use lay testimony to determine the extent, if any, of occupational disability. In the case at bar, the Board is charged with the responsibility of translating functional disability, which it did.

We are of the opinion that the Board's findings are not erroneous and that the Court of Appeals erred in directing the Workmen's Compensation Board to delete that portion of its award allowing the establishment of an indeterminate period of partial occupational disability benefits for Hush.

The decision of the Court of Appeals is reversed and the judgment of the Greenup Circuit Court is affirmed.

All concur.