LEECO, INC., Appellant,

v.

Billy S. ADAMS; Dwight T. Lovan, Administrative Law Judge; Workers' Compensation Board, Appellees.

No. 94–CA–001185–WC.

Court of Appeals of Kentucky.

March 22, 1996.

Timothy Joe Walker, London, for Appellant.

James D. Holliday, Hazard, for Appellee, Billy S. Adams.

Before LESTER, C.J., and GARDNER and SCHRODER, JJ.

LESTER, Chief Judge.

This is a petition for review of an opinion of the Workers' Compensation Board affirming the opinion and award of the Administrative Law Judge (ALJ). Appellant argues that: the ALJ's finding of pneumoconiosis is not supported by substantial evidence since he relied on medical opinions that are internally contradictory; and that KRS 342.732(1)(a) is unconstitutional under Section 2 of the Kentucky Constitution in that it denies the employer the right to substantive due process, and under Section 59 of the Kentucky Constitution in that it amounts to special legislation.

■ Appellant maintains that because the ALJ relied on the findings of Drs. Lane and Anderson, both of whom originally did not find pneumoconiosis but later did make that finding, his finding is not supported by substantial evidence and must be reversed.

The record shows that Dr. Lane read three x-rays. He found one revealed category 1/0 pneumoconiosis while the other was negative for the disease. Dr. Anderson read two x-rays as category 1/1 pneumoconiosis and three as negative. (Drs. Baker and Vaezy also found pneumoconiosis by x-ray.) The ALJ relied on the positive readings of Drs. Anderson and Lane, as well as the miner's 21–year coal mine employment history, to find that the claimant had met his burden of proving category 1 pneumoconiosis and therefore awarded retraining incentive benefits.

While appellant contends that the failure of Drs. Lane and Anderson to find all the x-rays positive detracts from their credibility, the ALJ relied on this fact in finding them the most credible x-ray readers. In the ALJ's opinion, this revealed a lack of bias and an honest interpretation of evidence regardless of who paid for the reading. We decline appellant's invitation to erode the ALJ's leeway in weighing the evidence.

■ When medical evidence conflicts, the ALJ has the sole authority to decide whom to believe. *Pruitt v. Bugg Brothers,* Ky., 547 S.W.2d 123 (1977). This the ALJ did when he chose to believe the positive readings by Drs. Lane and Anderson. This is not a question of what conflicting evidence to believe from the same witness since, in the ALJ's opinion, the readings of these physicians did not present an internal inconsistency. Because the ALJ's finding was supported by substantial evidence, the Board properly affirmed his decision as to this issue, and we do likewise. *Special Fund v. Francis,* Ky., 708 S.W.2d 641 (1986).

In reaching our decision that KRS 342.732(1)(a), the retraining incentive benefit (RIB) statute is constitutional and not violative of Section 2 of the Kentucky Constitution, we generously borrow from the case of *Kentucky Harlan Coal Company v. Holmes,* Ky., 872 S.W.2d 446 (1994), which declared KRS 342.732(1)(d) constitutional.

■ The *Holmes* Court rejected the notion that KRS 342.732(1)(d) violates due process under Section 2 of the Kentucky Constitution as being arbitrary and irrational. The statute involves the regulation of economic matters, therefore, it must be rationally related to a legitimate governmental objective to pass due process muster. "The constitutionality of a statute will be upheld if its classification is not arbitrary, or if it is founded upon any substantial distinction suggesting the necessity or propriety of such legislation." *Holmes, supra,* at 455. We believe the Supreme Court's holding in *Holmes, supra,* speaks not only to KRS 342.732(1)(d), but also to (1)(a) and the other two subsections:

Decidedly, KRS 342.732 and the classifications created therein are rationally related to a legitimate state objective, affording protection to all of Kentucky industry, (and hence, the employment/jobs of Kentucky workers) from an economic drain caused by Special Fund assessments for compensation claims directly related to the coal industry, and particularly those due to high incidence of coal workers' pneumoconiosis. As the problem the legislature sought to solve was attributable to the coal

industry, the solution therefor need deal only with workers of that industry. Said otherwise, the classification of coal workers with pneumoconiosis was founded on a substantial distinction that was necessary in view of the legislative history.

*Id.*

■ KRS 342.732, including subsection (1)(a), furthers the goals of lessening the economic drain on the Special Fund caused by claims due to coal mine employment, reducing workers' compensation payments, and providing an alternative to total disability. The purpose of KRS 342.732(1)(a), specifically, is to retrain workers for other jobs so as to diminish the likelihood of their becoming totally disabled by coal miners' pneumoconiosis later on. We need not address the efficiency with which the RIB statute accomplished these goals. Therefore, we find that KRS 342.732(1)(a) does not violate the employer's right to due process under Section 2 of our Kentucky Constitution.

■ The appellant's argument that KRS 342.732(1)(a) amounts to special legislation in violation of Section 59 of the Kentucky Constitution is also without merit. The legislature's purpose for enacting KRS 342.732(1)(a) was to encourage coal workers who have contracted occupational pneumoconiosis but who have not as yet sustained a significant respiratory impairment to leave the industry before they become disabled. The means by which the legislature sought to accomplish that objective was by providing for RIB. *See Thornsbury v. Aero Energy,* Ky., 908 S.W.2d 109 (1995).

As explained in *Holmes, supra,* the classification set forth in KRS 342.732 applies equally to all in the class and the legislature had distinct and natural reasons for separately classifying coal workers as well as for employing the subclassifications set forth within KRS 342.732, including that set forth in subsection (1)(a). *Id.* at 455. By providing a benefit which is aimed at encouraging coal workers who have contracted pneumoconiosis to leave the mining industry before they become disabled, the pre–1994 version of KRS 342.732(1)(a), like the other subsections of the statute, is rationally related to the legitimate governmental objectives which

were recognized by the Court in *Holmes. Id.* The fact that under the pre–1994 version of the statute some workers chose not to use the benefit for its intended purpose does not render the legislature's decision to provide the benefit so unreasonable as to be arbitrary. Accordingly, we hold that the pre–1994 version of KRS 342.732(1)(a) does not constitute special legislation in violation of Section 59 of the Kentucky Constitution.

For the foregoing reasons, we find that KRS 342.732(1)(a) is constitutional, and the Workers' Compensation Board's opinion is affirmed.

All concur.