RENDERED: JUNE 3, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1263-WC

TRANE COMPANY                                   APPELLANT

                     PETITION FOR REVIEW OF A DECISION
v.                  OF THE WORKERS' COMPENSATION BOARD
                         ACTION NO. WC-20-00411

BRANDON BARNETT;
KENTUCKY WORKERS'
COMPENSATION BOARD; AND
HONORABLE TONYA CLEMONS,
ADMINISTRATIVE LAW JUDGE                         APPELLEES

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE: JONES, MAZE, AND TAYLOR, JUDGES.

MAZE, JUDGE: Trane Company (Trane) appeals from an opinion of the

Workers' Compensation Board affirming those portions of the award of the

Administrative Law Judge (ALJ) relating to causation and application of the three-multiplier. We affirm.

On October 25, 2019, appellee Brandon Barnett filed a workers' compensation Form 101 alleging work-related injuries to his neck, back, shoulders, and knees as result of cumulative trauma from his approximately 24 years of employment with Trane. On the same date, Barnett filed Form 103 alleging a work-related hearing loss due to repetitive exposure to loud noise in the workplace. Although the ALJ initially consolidated those claims, her subsequent dismissal of the hearing loss claim is not before us in this appeal.

Barnett described the nature of his work for Trane in a May 2020 deposition. Trane hired Barnett as a temporary worker in January 1996 and employed him as a full-time employee on March 25, 1996. Barnett testified that during his employment with Trane he initially worked for four years in coil assembly. For the next six years, Barnett did top and bottom seal work which required pulling large metal sheets from their stacks, loading them on carts, and taking them to a table where he would work on them by operating a big punching machine. Barnett testified that he suffered an acute injury to his right shoulder in 2006 while pulling a metal sheet. He reported the injury and received physical therapy but could not recall whether he missed work due to that event.

For approximately the next four years, Barnett next worked on the custom valve line where he built custom air conditioning units. He testified that this job required repeated lifting of panels weighing up to 50 to 60 pounds. In his deposition testimony concerning this phase of his employment, Barnett emphasized that it was the heavy lifting and the constant nature of the work which was the most physically demanding:

> Well, you, I mean, did it all day long, but you got, you know, three breaks out of the day, you got two tens and a 15-minute lunch break. But, yeah, it's all day long, you know, you put one part on and then you have to go back and put the next part. It's just, you know, nonstop.

In his final position with Trane, Barnett worked in foam installation for approximately 9 years. This job required Barnett to retrieve formed metal pieces, place a pattern on them, and then inject foam into them. He also built doors and door jambs. Barnett testified that pulling the panels and putting them into the foam press was physically demanding, estimating that the panels he worked with weighed between a couple pounds to 30 to 40 pounds. In response to a question as to the most physically demanding aspects of that particular work, Barnett testified:

> I would say having to pull a – pull the panels, which were pretty good size, out of the racks. I got – I got panels just piled up into this metal rack, it's on wheels, and they're – they're vertical, you know, and they're formed metal. So I've got to – I've got to grab one, each one individually out of a vertical rack and lay it horizontally by myself and then do what I've got to do to it and then I've got to put it right back in the same rack I just got it out of. And

then, you know, of course, you've got to drag that rack – you know, I'm going to have to drag it to – push it, you know, a hundred feet to the next – to the next person, who's across – you know, across the way.

And then another aspect was picking these panels up and putting them in this foam press. That was a – that was a lot of work because you had to pick them up and – of course, you know, this press has got different shells in it, so you've got to put them in there and then you've got to take them back out, constantly handling them, then picking – picking them back up, putting them back in another rack when you got done. A lot of twisting and turning and pulling and tugging.

In exchange for his voluntary resignation in October 2019, Trane offered, and Barnett accepted, a severance package amounting to roughly $15,000.00. The offer stemmed from the fact that the plant at which Barnett worked was moving to South Carolina. At the time of his resignation, Barnett was earning $21.40 per hour and worked approximately a 40-hour week. Although Barnett was not under any work restrictions at the time his employment with Trane terminated, he stated in his deposition that even had the plant not been closing he could not have continued working:

No, I was actually trying to find a way out. I just couldn't do this work no more. It's – it's breaking me down, which is why I went ahead and got my – a degree [in HVAC design and installation].

Concerning the problems which precipitated the filing of his claim, Barnett testified that at the time of his deposition he was experiencing pain at the

back of his neck at the shoulder blades, shooting pain in his knees, and lower back pain which sometimes radiated into his legs. Barnett stated his belief that constantly looking down at the conveyor lines caused his neck condition and that working on Trane's concrete flows for twenty-four years caused his knee problems.

In support of his claim, Barnett offered a Form 107 medical report of Dr. Bruce Guberman who diagnosed chronic posttraumatic strain and degenerative joint and disc disease of the lumbosacral spine, chronic posttraumatic strain and degenerative joint and disc disease of the cervical spine, and chronic posttraumatic strain of both knees, all of which he attributed to the cumulative trauma of Barnett's work at Trane. Dr. Guberman opined that Barnett reached maximum medical improvement on July 15, 2020, assessed a 15% combined impairment rating, and stated his opinion that Barnett was not able to return to the type of work he was performing at the time of his injury. In addition, Dr. Guberman imposed the following restrictions:

> In my opinion, he is unable to stand and/or walk combined for a total of more than 30 minutes at a time or more than 4 or 5 hours in an 8-hour day. In my opinion, he is unable to sit for more than 30 minutes at a time or more than 4 or 5 hours in an 8-hour day. In my opinion, he should avoid kneeling, crawling, and squatting. Furthermore, in my opinion, he is unable to lift, carry, push or pull objects weighing more than 25 pounds occasionally or more than 5 pounds frequently. He is not

able to climb up and down ladders or should avoid stairs and inclines.

Barnett also supported his claim with the report of Dr. Julie Ann Martin, a chiropractor. Dr. Martin diagnosed hand pain, knee pain, lumbar facet syndrome, cervical segmental dysfunction, thoracic segmental dysfunction, and cervical myofascitis. In response to a series of questions, Dr. Martin confirmed her opinion that Barnett's current neck, back, shoulder, and knee problems were caused either wholly or in part by his job activities, as well as affirming that continuation in his job duties would have additional adverse health consequences.

Trane countered with an independent medical examination report of Dr. Stacie Grossfield who found no cumulative trauma injuries to Barnett's lumbar spine, cervical spine, or bilateral knees due to his work. Having found no harmful change, Dr. Grossfield stated that she could not explain Barnett's subjective complaints of pain because she found no anatomical reasons to match his pain complaints.

With regard to causation, the ALJ found Dr. Guberman's testimony to be most credible and persuasive with respect to Barnett's alleged cumulative trauma injuries to his cervical spine, lumbar spine, and bilateral knees. Stating that Dr. Guberman provided detailed documentation of his examination and explanation of his findings with respect to the medical causes of Barnett's complaints, the ALJ found that Barnett had sustained work-related cumulative

trauma injuries to his cervical spine, lumbar spine, and bilateral knees with a manifestation date of October 25, 2019. Based upon the testimony of Dr. Guberman, and to a lesser degree that of Dr. Grossfield, the ALJ determined that Barnett had failed to meet his burden of establishing cumulative trauma injuries to his bilateral shoulders and therefore dismissed that portion of Barnett's claim. The ALJ thereafter awarded Barnett permanent partial disability benefits based upon a 15% disability rating, applying the three-multiplier set out in Kentucky Revised Statute (KRS) 342.730(1)(c)1. Based upon Dr. Guberman's opinions and restrictions, the ALJ concluded that Barnett did not retain the capacity to return to his pre-injury employment with Trane which qualified him for application of the three-multiplier. After finding that Barnett had reached maximum medical improvement on July 15, 2020, the ALJ awarded temporary total disability benefits from the date of his layoff on October 25, 2019, through July 15, 2020.

Both Barnett and Trane moved for reconsideration with Barnett arguing that the ALJ erred in failing to award medical expenses for the injuries to the cervical spine, lumbar spine, and knees and Trane citing error in the finding of a work-related injury, in the application of the three-multiplier, and in the award of temporary total disability benefits. The ALJ furnished additional findings in denying Trane's petition. The ALJ also sustained Barnett's contention that there was a patent error in that the prior award identified a work-related wrist injury,

-7-

clarifying that the award of medical expenses was associated with his compensable cumulative trauma injuries to his cervical spine, lumbar spine, and bilateral knees. Trane's subsequent appeal to the Workers' Compensation Board resulted in an opinion affirming the award of permanent partial disability benefits and application of the three-multiplier. However, the Board reversed and remanded the award of temporary total disability benefits for additional findings and entry of an amended opinion and, if appropriate, a revised award. In this appeal, Trane continues to predicate error on the finding that Barnett sustained his burden of establishing an injury that was causally related to his employment and in the application of the three-multiplier to the award of permanent partial benefits.

We commence with a reiteration of the standards which confine our review. In *Whittaker v. Rowland*, 998 S.W.2d 479, 491 (Ky. 1999), the Supreme Court of Kentucky explained that "[w]here the party with the burden of proof was successful before the ALJ, the issue on appeal is whether substantial evidence supported the ALJ's conclusion." (Citation omitted.) Substantial evidence "means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B.F. Goodrich Chemical Company*, 474 S.W.2d 367, 369 (Ky. 1971). Because Barnett bore the burden of proof before the ALJ, our analysis focuses upon whether the decision of the ALJ is supported by substantial evidence. To prevail in this appeal, Trane must

demonstrate that no evidence of substantial probative value supports the ALJ's decision. *Special Fund v. Francis*, 708 S.W.2d 641 (Ky. 1986).

Turning to the first of Trane's allegations of error, we concur in the Board's assessment that the opinions of Drs. Guberman and Martin constitute substantial evidence supporting the decision that Barnett had proven work-related cumulative trauma injuries. Trane's primary objection to both doctors' opinions focuses upon the sufficiency of their causation analysis. We find no reversible error.

Dr. Guberman unequivocally expressed his opinion that the cumulative trauma of his work had caused Barnett to experience "more severe symptoms, range of motion abnormalities, interference with activities of daily living, and functional limitations associated with his cervical spine, lumbar spine, and bilateral knees than would be expected for a man of his age[.]" Similarly, Dr. Martin expressed her opinion as to causation by responding in the affirmative to the following question: "Do you believe that his present medical issues [handwritten "neck, back, shoulder, knees"] is caused, either wholly or in part, by his job activities?" Like the Board, we are persuaded that the fact that Drs. Guberman and Martin did not provide more detailed explanations of their opinions merely goes to the credibility of their assessments, not the admissibility of their opinions. Our Supreme Court has repeatedly instructed that matters of credibility

are exclusively assigned to the ALJ, *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418 (Ky. 1985); that the ALJ has sole authority to determine the weight, credibility and substance of the evidence, *Square D Company v. Tipton*, 862 S.W.2d 308 (Ky. 1993); and importantly, that the mere existence of evidence contrary to the ALJ's decision alone is an insufficient basis for requiring reversal on appeal. *Special Fund v. Francis, supra.* Here, the ALJ carefully explained her reliance upon the opinions of Drs. Guberman and Martin over that expressed in the opinion of Dr. Grossfield, citing in particular Dr. Guberman's "detailed documentation of his examination of Mr. Barnett and explanation of his findings with respect to the medical cause of [Barnett's] complaints."

We find no error in the Board's conclusion that Dr. Grossman's contrary opinion, that Barnett had not suffered a cumulative trauma injury related to his employment, was nothing more than conflicting evidence which the ALJ had the sole authority to resolve. As the Board correctly observed, "if the physicians in a case genuinely express medically sound, but differing, opinions as to the severity of a claimant's injury, the ALJ has the discretion to choose which physician's opinion to believe." *Jones v. Brasch-Barry Gen. Contractors*, 189 S.W.3d 149, 153 (Ky. App. 2006). The opinions of Drs. Guberman and Martin cannot be construed as so lacking in substance that the ALJ's reliance upon them constituted reversible error. Like the Board, we cannot accept Trane's invitation to second-

-10-

guess the decision of the ALJ and her stated rationale for choosing to rely upon the opinions of Drs. Guberman and Martin over that of Dr. Grossman. To do so would invade the exclusive province of the ALJ.

Concerning application of the three multiplier, KRS 342.730(1)(c)1. provides the framework for our review:

> If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three (3) times the amount otherwise determined under paragraph (b) of this subsection, but this provision shall not be construed so as to extend the duration of payments[.]

Trane insists that the ALJ erred in relying upon Dr. Guberman's work restrictions in applying the three-multiplier arguing there is no evidence Barnett stopped working at Trane because he lacked the physical capacity to do the type of work he was performing at the time of his injury. Rather, Trane argues that Barnett stopped working at Trane only because the plant was closing and moving to South Carolina.

In concluding that Dr. Guberman's opinion and restrictions supported the application of the three-multiplier, the Board cited the direction of our Supreme Court in *Ford Motor Company v. Forman*, 142 S.W.3d 141, 145 (Ky. 2004), that in cases concerning the applicability of the three-multiplier, ALJ's "must analyze the evidence to determine what job(s) the claimant performed at the time of injury

-11-

and to determine from the lay and medical evidence whether [he or] she retains the physical capacity to return to those jobs."

The Board correctly observed that this case presents an odd situation in that Barnett stopped working at Trane because the plant was closing and he was offered an attractive severance package to voluntarily terminate his employment. Barnett described the situation as similar to a "volunteer layoff," stating "[t]here were work shortages and I got laid off."  Nevertheless, we agree with the Board that the pivotal inquiry is not the reason Barnett stopped working but whether he retains the capacity to perform his customary employment.

Further, we concur in the Board's conclusion that the ALJ was free to accept Barnett's testimony as to his inability to perform his previous work for Trane, in addition to accepting Dr. Guberman's restrictions as precluding his return to his prior employment.  As the Supreme Court explained in *Ira A. Watson Department Store v. Hamilton*:

> Although the ALJ must necessarily consider the worker's medical condition when determining the extent of his occupational disability at a particular point in time, the ALJ is not required to rely upon the vocational opinions of either the medical experts or the vocational experts. *See*, *Eaton Axle Corp. v. Nally*, 688 S.W.2d 334 (Ky. 1985); *Seventh Street Road Tobacco Warehouse v. Stillwell*, 550 S.W.2d 469 (Ky. 1976).  A worker's testimony is competent evidence of his physical condition and of his ability to perform various activities both before and after being injured.  *Hush v. Abrams*, 584 S.W.2d 48 (Ky. 1979).

34 S.W.3d 48, 52 (Ky. 2000). Not only did Dr. Guberman clearly express the reasons for his opinion that Barnett could not resume his previous employment, Barnett himself testified at length that he was no longer capable of performing the strenuous work at Trane due to the pain it caused in his back, neck, and knees. In fact, he had been actively attempting to prepare himself to leave that type of work by continuing his education.

Because this Court has consistently held that an ALJ is free to accept an employee's self-assessment of his or her ability to labor, Barnett's own testimony, coupled with the restrictions imposed by Dr. Guberman, clearly constitute sufficient evidence to support the ALJ's application of the three-multiplier. In sum, we are convinced that ALJ's determinations both as to the existence of a work-related cumulative trauma injury and as to the application of the three-multiplier fall squarely within the principles set out in *Hamilton*:

> Although a party may note evidence which would have supported a conclusion contrary to the ALJ's decision, such evidence is not an adequate basis for reversal on appeal. The crux of the inquiry on appeal is **whether the finding which was made is so unreasonable under the evidence that it must be viewed as erroneous as a matter of law**.

*Id.* at 52 (citations omitted) (emphasis added). Nothing in this record or Trane's arguments would allow us to reach such a conclusion regarding the ALJ's findings in this appeal.

-13-

Accordingly, the opinion of the Workers' Compensation Board is in all respects affirmed.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE BRANDON BARNETT: |
|---|---|
| Donald J. Neihaus<br>Lexington, Kentucky | Clayton D. Scott<br>Lexington, Kentucky |