# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

*THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28 (4) (c), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS AUTHORITY IN ANY OTHER CASE IN ANY COURT OF THIS STATE.*

RENDERED: JUNE 15, 2006
NOT TO BE PUBLISHED

# Supreme Court of Kentucky FINAL

## 2005-SC-0751-WC

DATE 7-6-06 _____ D.C.

TRICON GLOBAL RESTAURANT                                    APPELLANT

V.                        APPEAL FROM COURT OF APPEALS
                               2005-CA-0007-WC
                     WORKERS' COMPENSATION NO. 00-76023

JODI JOHNSON; HON. RICHARD M.
JOINER, ALJ; AND WORKERS'
COMPENSATION BOARD                                          APPELLEES

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

An Administrative Law Judge (ALJ) determined that the claimant did not agree to waive the right to reopen her claim for a cervical injury and granted increased partial disability benefits. The Workers' Compensation Board and the Court of Appeals affirmed. Appealing, the employer asserts that the settlement precluded a reopening for additional partial disability benefits and that the ALJ did not base the increased award on a correct use of the American Medical Association's Guides to the Evaluation of Permanent Impairment (Guides) and the substantial evidence. We affirm.

The claimant was born in 1969. She completed high school, some college courses, and was honorably discharged from the United States Navy. Most of her work experience was as a manager or supervisor in fast food restaurants and convenience stores. In 1998, she injured her lower back while working for a previous employer. Dr.

Nazar treated her for a herniated disc at L3-4.

The injury presently at issue occurred on July 11, 2000. While the claimant was removing cartons of food from a shelf of a walk-in cooler, the shelf broke away from the wall. It fell onto her, causing 40-pound cartons of food to fall and hit her in the head and neck. Her supervisor took her to the emergency room for treatment. Although she returned to work after four or five weeks, she stated that she was able to continue working for only a few days due to her symptoms.

On August 14, 2000, Dr. Changaris diagnosed lumbar abnormalities from L2-3 through L5-S1. He assigned a 10% impairment using the 4th edition of the Guides, all of which was due to the 1998 injury. He limited the claimant to light duty work, to lifting no more than 20 pounds, and to minimal bending, stooping, and climbing. He also indicated that she should be permitted to sit every one to two hours.

Dr. Sheridan evaluated the claimant for the employer on October 31, 2000. He diagnosed an acute low back sprain/strain and an acute left trapezial and interscapular strain, both of which were due to the 2000 injury but had resolved. He assigned no impairment to the conditions.

Dr. Nazar treated the claimant from August 24, 2000, until March 14, 2001, for ulnar neuropathy and neck pain. On January 18, 2001, he diagnosed a disc protrusion at C6-7 and a lesser protrusion at C5-6, which was consistent with a recent MRI scan. He noted on March 14, 2001, that the ulnar condition had resolved, but the claimant continued to have neck pain, particularly when flexing and extending her neck and rotating her head. On August 3, 2001, he assigned a 15-18% impairment under DRE Category III and attributed it entirely to the July, 2000, incident. He restricted the claimant to minimal lifting (less than fifteen pounds), bending, stooping, climbing,

-2-

crawling, and overhead work, and he prohibited the use of vibratory tools.

Dr. Changaris evaluated the claimant again on August 3, 2001, and diagnosed cervical radiculopathy, herniation at C6-7, and mild depression, all of which were due to the 2000 injury. Using the combined values table, he assigned a 21-24% impairment under the 5th Edition of the Guides (15-18% impairment for DRE Cervical Category III and 7% for loss of shoulder range of motion). He imposed restrictions much like Dr. Nazar's.

On February 6, 2002, an ALJ approved the parties' settlement. The agreement listed the alleged injuries as including: neck, low back, left trapezial strain, ulnar neuropathy, and carpal tunnel. It indicated that the employer had paid $1,667.98 in medical expenses, with the last payment being in October, 2001, and that all expenses regarding the neck were unpaid or contested. The parties agreed that any claims for ulnar neuropathy, carpal tunnel syndrome, and low back sprain/strain were unrelated to the claimant's work for the defendant-employer and would be dismissed with prejudice. They agreed that any claim for left trapezial sprain would also be dismissed with prejudice. The agreement then stated:

> The plaintiff agrees that she shall waive her right to reopen any and all of those dismissed claims. As consideration for this waiver, Plaintiff acknowledges receiving the settlement on her neck lump sum is sufficient consideration for waiver of her right to reopen any of the alleged dismissed claims.

The parties agreed that the alleged depression was not a work-related condition and that although there was no formal claim for the condition, any allegation or claim would be dismissed with prejudice. The agreement then stated:

> As a compromise of this claim, the Defendant-Employer shall accept as compensable the Plaintiff's cervical claim. The Plaintiff has agreed to waive any past-due temporary total disability claim

-3-

she may have for the cervical condition. The Defendant-Employer has disputed the compensability of the cervical condition from the start. The Plaintiff understands that she will receive no claimed past-due temporary total disability for the cervical condition. The Defendant-Employer will, however, pay a 15% permanent partial disability for the neck condition. This is a compromise permanent partial disability based on the disputed nature of the claim. The 15% shall be calculated as above for a lump sum payment of $15,985.60. The Plaintiff understands and accepts a 15% permanent partial disability paid at $15,985.60 as sufficient consideration for buyout and waiver of any right to indemnity benefits she may have under KRS 342.730, be that permanent partial, permanent total or past-due temporary total disability benefits. Should the Plaintiff have surgery, the Defendant-Employer will pay temporary total disability benefits per the statute. The Plaintiff's medicals for the cervical condition shall be covered per KRS 342.020 and the Kentucky Fee Schedule. The Plaintiff enters into this agreement freely, knowingly, intelligently and with advice of competent counsel. The Plaintiff acknowledges that she is not entitled to any 1.5 enhancer and any claim for such is waived in this agreement.

On November 4, 2002, Dr. Nazar performed an anterior cervical diskectomy and fusion at C6-7. On April 23, 2003, Dr. Bilkey examined the claimant and reviewed Dr. Nazar's records. A specialist in physical medicine and rehabilitation, he indicated that Dr. Nazar had referred the claimant for an evaluation. Based on a recent MRI, he noted the fusion at C6-7 with anatomical alignment and also noted bulging at C5-6 and C6-7 causing mild canal stenosis. He diagnosed residual myofascial pain in the shoulder and neck muscles that might explain the claimant's symptoms and that, if addressed, offered the possibility of significant improvement. He recommended a home exercise program, medication, and a restriction to light duty

Dr. Bilkey examined the claimant again on July 21, 2003, at which time her neck condition appeared to have stabilized. Addressing impairment, he stated as follows:

> Ms. Johnson has acquired a permanent partial impairment as a result of the work injury of 7/24/00. According to the <u>American Medical Association Guides to the Evaluation of Permanent</u>

Impairment, Fifth Edition, table 15-5, because she has had a one level anterior cervical diskectomy and fusion, she would have to be considered as a DRE Cervical Category IV impairment and therefore has a 25% whole person impairment rating.

In his opinion, the claimant should lift no more than ten pounds and perform no overhead work and no repetitive upper extremity work.

On October 10, 2003, the claimant moved to reopen her claim. She supported the motion with Dr. Bilkey's reports and averred that her disability and impairment had increased since the settlement. Objecting, the employer maintained that "in consideration of the receipt by her of the compromised amount, she gave up any opportunity to receive additional benefits." It also maintained that Dr. Bilkey's report did not show a change of impairment because it did not establish that he reviewed any flexion/extension x-rays or stated a range of motion impairment based on such x-rays. The motion was granted, after which the claimant and Dr. Bilkey were deposed.

On January 28, 2004, the claimant testified that she continued to experience pain in the neck and shoulder blades. She had not slept well since the surgery and had to change positions several times during the night. She also had to change positions when sitting, and her stiffness made driving difficult. Wearing a bra caused pain because it pulled at her neck. She stated that she had looked for work; however, her restrictions prevented her from performing the type of work she performed when she was injured and she had no other job skills. She had not been able to get student loans for retraining due to the effect of the outstanding medical bills on her credit rating.

Questioned by counsel for the employer, Dr. Bilkey testified that he had taken courses in the process of being certified by the American Board of Independent Medical Examiners. They included information regarding the intent of the authors of the 5th

-5-

edition of the AMA Guides. He stated that the authors did not intend to change impairments significantly from the 4th edition. Under the 4th edition, a patient with a herniated disc and pinched nerve who had undergone surgery would be placed in DRE Category III, and a separate impairment would be assigned for instability that required a fusion. He stated that, over time, the standard surgical technique had changed from a posterior to an anterior procedure. A fusion is part of an anterior diskectomy, the procedure the claimant underwent. Dr. Bilkey stated that the 5th edition automatically places any patient who has undergone a fusion, including an anterior diskectomy, in Category IV (25-28% impairment). Asked what the claimant's impairment would be "according to the original intent of the authors of the AMA Guidelines," Dr. Bilkey replied, "a DRE Category III impairment, which would be a 15 percent."

Questioned by counsel for the claimant, Dr. Bilkey stated that he assigned a 25% impairment using the 5th edition of the Guides. He attributed the impairment to the claimant's 2000 injury. He acknowledged that the claimant's surgery was performed after February 6, 2002, and that he rated her impairment after the surgery.

Questioned again by counsel for the employer, Dr. Bilkey reiterated that he followed the Guides when assigning the 5th edition impairment but that the resulting impairment was not consistent with the original intent of the authors. Asked what the claimant's pre-surgical 5th edition impairment would have been, he stated Category III. Asked whether her present impairment would be the same with strict adherence to the authors' intent, he stated "Yes." He also stated that she was capable of work that was within her restrictions.

The claimant submitted, without objection, a December 10, 2001, letter from her counsel to the employer's counsel. It indicated that she was unwilling to accept a

-6-

settlement without the right to reopen.

After a hearing and briefing, the ALJ noted that the settlement agreement contained a "complex paragraph" that addressed six separate body parts. The agreement dismissed the claims relating to five of those parts with prejudice and indicated that the waiver of the right to reopen applied only to the dismissed claims. The only compensable claim concerned the cervical spine. Noting that the agreement contemplated automatic temporary total disability benefits in the event of surgery, the ALJ determined that the terms of the agreement did not restrict the claimant's right to reopen the cervical spine claim. Moreover, the parol evidence supported this interpretation of the agreement. Turning to the merits, the ALJ determined that the claimant established her actual impairment to the cervical spine at settlement to be 15-18%. She had since undergone surgery, and Dr. Bilkey assigned a 25% impairment using the 5th edition of the Guides. Although acknowledging the employer's argument that the impairment should not be accepted based on Dr. Bilkey's understanding of the authors' intent, the ALJ relied on the plain language of KRS 342.730, noted that the Guides provided a 25% impairment for a cervical fusion, and determined that the claimant's present impairment was 25%. The ALJ determined that the claimant expressly waived her entitlement to an enhanced benefit and that she was not working, so she did not have a wage that was equal to or greater than her wage at the time of the injury. The employer received credit for benefits paid under the settlement.

An agreement to settle a workers' compensation claim is a contract between the parties. Whittaker v. Pollard, 25 S.W.3d 466, 469 (Ky. 2000). Questions concerning the construction and interpretation of contractual terms are legal in nature. Cinelli v. Ward, 997 S.W.2d 474, 476 (Ky. App. 1998). Where contractual terms are ambiguous

or inconsistent, the primary rule of construction is to effectuate the parties' intent as demonstrated by the contract as a whole. Bullock v. Young, 252 Ky. 640, 67 S.W.2d 941 (1933). When doing so, the court must take into account the circumstances under which the agreement was executed, attempt to discern the effect that the parties intended, and reconcile inconsistent terms where possible. Black Star Coal Corp. v. Napier, 303 Ky. 778, 199 S.W.2d 449 (1947); Lockwood's Trustee v. Lockwood, 250 Ky. 262, 62 S.W.2d 1053 (1933). Consideration for a waiver of the right to reopen must be contained on the face of the agreement and "may not simply be implied from some other activity." Huff Contracting v. Sark, 12 S.W.3d 704 (Ky. App. 2000).

Asserting that the claimant waived the right to reopen, the employer relies on the statement that payment of a 15% permanent partial disability was "sufficient consideration for buyout and waiver of any right to indemnity benefits she may have under KRS 342.730, be that permanent partial, permanent total or past-due temporary total disability benefits." We note, however, that the statement is in the present tense and refers only to any right she "may have" under KRS 342.730. It does not refer to any right she might have in the future under KRS 342.125. Although the agreement contains an explicit waiver of the right to reopen the dismissed claims and an explicit waiver of the right to past-due TTD benefits for the cervical condition, it contains no explicit waiver of the right to reopen the cervical claim or consideration for doing so. Moreover, it contemplates future TTD benefits in the event of surgery. The agreement evinces no intent for the claimant to waive her right to reopen the cervical claim.

Regardless of the disability to which the parties agreed on February 6, 2002, it was the claimant's burden to show the extent of her actual occupational disability at that time and to show that it had increased at reopening. KRS 342.125(7); Beale v.

-8-

Faultless Hardware, 837 S.W.2d 893 (Ky. 1992). Since December 12, 1996, KRS 342.730(1)(b) has relied on impairment as the primary measure of occupational disability. See, Adkins v. R & S Body Co., 58 S.W.3d 428 (Ky. 2001).

KRS 342.285 designates the ALJ as the finder of fact with the sole discretion to determine the quality, character, and substance of evidence. See Paramount Foods, Inc. v. Burkhardt, 695 S.W.2d 418 (Ky. 1985). An ALJ may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same party's total proof. Caudill v. Maloney's Discount Stores, 560 S.W.2d 15, 16 (Ky. 1977). Where the evidence is conflicting, an ALJ may choose whom and what to believe. Pruitt v. Bugg Brothers, 547 S.W.2d 123 (Ky. 1977). A finding that favors the party with the burden of proof must be upheld on appeal if it is supported by substantial evidence and, therefore, is reasonable. Special Fund v. Francis, 708 S.W.2d 641 (Ky. 1986).

KRS 342.730(1)(b) is explicit. It requires impairment to be measured using the latest available edition of the AMA Guides. Medical evidence supported the finding that the claimant's impairment at settlement was 15-18% under the 5th edition of the Guides. Dr. Bilkey stated at reopening that her pre-surgical 5th edition impairment would have been 15-18% (Category III) and that he followed the 5th edition of the Guides when assigning a 25% impairment (Category IV) after the anterior cervical diskectomy and fusion at C6-7. He indicated that he relied on Table 15-5 (page 392) of the 5th edition when rating the claimant's impairment, which places a patient who has undergone "a successful or unsuccessful surgical arthrodesis" (fusion) in Category IV (25-28% impairment). See also, Id. at 394, Example 15-15, (a patient who underwent an anterior cervical diskectomy and fusion at C6-7 warranted a Category IV impairment).

-9-

Dr. Bilkey stated that the rating was not consistent with his knowledge of the authors' original intent and acknowledged that the Guides required motion segment integrity to be measured with flexion/extension x-rays. However, consistent with Example 15-15, supra, he did not state that they required such x-rays in a patient who has undergone a surgical fusion. Nor did he state that the 25% impairment he assigned was erroneous under the Guides. Under the circumstances, it was reasonable for the ALJ to conclude that the claimant's occupational disability increased after the settlement and that her impairment at reopening was 25% under the latest edition of the Guides.

The decision of the Court of Appeals is affirmed.

All concur.

COUNSEL FOR APPELLANT:

Walter E. Harding
Boehl, Stopher & Graves, LLP
2300 Aegon Center
400 West Market Street
Louisville, KY 40202

COUNSEL FOR APPELLEE,
JODI JOHNSON:

Jeffrey T. Sampson
Sampson & Slechter, PLLC
455 South Third Street, 4th Floor
Louisville, KY 40202