RENDERED:  AUGUST 20, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0134-WC

TRANE CO.                                                                                      APPELLANT

v.          PETITION FOR REVIEW OF A DECISION
OF THE WORKERS' COMPENSATION BOARD
ACTION NOS. WC-20-00104 & WC-20-00103

TOMMY HAFLEY;
HONORABLE GRANT S. ROARK,
ADMINISTRATIVE LAW JUDGE;
and WORKERS' COMPENSATION
BOARD                                                                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, KRAMER, AND L. THOMPSON, JUDGES.

KRAMER, JUDGE:  An administrative law judge ("ALJ") awarded workers'

compensation benefits to appellee Tommy Hafley based upon a determination that

Hafley sustained work-related cumulative trauma injuries to his neck, lower back,

and knees during his 38.5 years of employment with the appellant, Trane Co. Specifically, the ALJ found Hafley totally occupationally disabled and awarded him permanent total disability and medical benefits. Trane subsequently appealed to the Workers' Compensation Board ("Board"), asserting the ALJ: (1) improperly relied upon what Trane believes is deficient evidence from Hafley's medical expert, Dr. John Gilbert; (2) failed to enter an award otherwise supported by substantial evidence; and (3) committed an abuse of discretion by finding Hafley permanently and totally disabled. The Board affirmed. Trane thereafter filed this appeal, asserting the same arguments it did before the Board. Upon review, we likewise affirm.

The function of this Court is to review the Board's decision solely to determine whether the Board has "overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). Having reviewed the matter thoroughly and evaluated the Board's opinion for error, we conclude its reasoning is sound and discern nothing indicative of error. Consequently, we adopt its analysis and conclusions as follows:

> Hafley, as the claimant in a workers' compensation proceeding, had the burden of proving each of the essential elements of his cause of action, including causation. *See* KRS[1] 342.0011(1); Snawder v. Stice,

---

[1] Kentucky Revised Statute.

576 S.W.2d 276 (Ky. App. 1979). Since Hafley was successful in that burden, the question on appeal is whether substantial evidence of record supports the ALJ's decision. Wolf Creek Collieries v. Crum, 673 S.W.2d 735 (Ky. App. 1984). "Substantial evidence" is defined as evidence of relevant consequence having the fitness to induce conviction in the minds of reasonable persons. Smyzer v. B.F. Goodrich Chemical Co., 474 S.W.2d 367 (Ky. 1971).

In rendering a decision, KRS 342.285 grants an ALJ as fact-finder the sole discretion to determine the quality, character, and substance of evidence. Square D[] Co. v. Tipton, 862 S.W.2d 308 (Ky. 1993). An ALJ may draw reasonable inferences from the evidence, reject any testimony, and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof. Jackson v. General Refractories Co., 581 S.W.2d 10 (Ky. 1979); Caudill v. Maloney's Discount Stores, 560 S.W.2d 15 (Ky. 1977). In that regard, an ALJ is vested with broad authority to decide questions involving causation. Dravo Lime Co. v. Eakins, 156 S.W.3d 283 (Ky. [2005]). Although a party may note evidence that would have supported a different outcome than that reached by an ALJ, such proof is not an adequate basis to reverse on appeal. McCloud v. Beth-Elkhorn Corp., 514 S.W.2d 46 (Ky. 1974). Rather, it must be shown there was no evidence of substantial probative value to support the decision. Special Fund v. Francis, 708 S.W.2d 641 (Ky. 1986).

The function of the Board in reviewing an ALJ's decision is limited to a determination of whether the findings made are so unreasonable under the evidence that they must be reversed as a matter of law. Ira A. Watson Department Store v. Hamilton, 34 S.W.3d 48 (Ky. 2000). The Board, as an appellate tribunal, may not usurp the ALJ's role as fact-finder by superimposing its own appraisals as to weight and credibility or by noting

other conclusions or reasonable inferences that otherwise could have been drawn from the evidence.  <u>Whittaker v. Rowland</u>, 998 S.W.2d 479 (Ky. 1999).

We find no merit in Trane's argument the ALJ erred in relying upon Dr. Gilbert's opinions because he possessed an inaccurate understanding of Hafley's work and also failed to provide an explanation for his opinion Hafley's injuries are work-related.  In his February 12, 2020, report, Dr. Gilbert provided the following work history:

> Hafley is a 61-year-old white male who did heavy manual labor at Trane for 38.5 years as receiver.  He describes wear and tear over the years.  He describes spinal pain mostly in his neck and back and cervicogenic headaches.  He describes pain, numbness and weakness radiating into the left arm and both legs in a multidermatomal and myotomal type distribution.  He has tried to just tough it out with ibuprofen, Aleve, Advil, and Tylenol.  He says his knees give him a lot of pain, both knees.  He describes pain and mainly weakness in both knees.  He has troubled [sic] stooping, crawling, crouching or doing any heavy lifting.  He has tried chiropractic, physical therapy off and on over the years.  He saw Dr. Marin in 12/2019 who did x-rays showing spondylolisthesis at C3-C4 grade 1 and degenerative changes i.e., osteoarthrosis from C2 through T1 as well as changes in the thoracic spine and diagnosed elbow and knee pain and spinal dysfunction and facet syndrome.

Dr. Gilbert's physical examination revealed spasm, tenderness, and limited range of motion in the cervical, thoracic, and lumbar regions.  Hafley had positive

Spurling's test bilaterally and positive straight leg raise test bilaterally. There was "reproducible 4+/5 strength in the bilateral knees, flexion, extension, and tenderness in both knees." Dr. Gilbert diagnosed:

> Spinal pain, muscle spasms, cervical and lumbar radiculopathy in a dermatomal and myotomal distribution with bilateral knee pain and weakness, which is reproducible in the bilateral knee flexors and extensors secondary cumulative traumas over the year.

Dr. Gilbert believed the work event described to him by Hafley was the cause of his impairment and none of the impairment was due to a cause other than the work event described. Pursuant to the 5th Edition of the American Medical Association, Guides to the Evaluation of Permanent Impairment ("AMA Guides"), he assessed a 15% rating for the cervical spine condition, 10% rating for the lumbar spine condition, 10% rating for each knee condition, and 5% rating for the thoracic spine condition yielding a total whole person impairment rating of 42%. In response to whether Hafley described the physical requirements of the type of work performed at the time of injury, Dr. Gilbert stated "Heavy manual labor at train [sic] corporation for 38.5 years." He opined Hafley's "spinal pain, cervical and lumbar radiculopathies and bilateral knee pain and weakness preclude the type of work previously performed." He rated Hafley as "sedentary" and "100% occupationally disabled from any occupation for the foreseeable future."

Based on Dr. Gilbert's report, the ALJ could reasonably infer Hafley provided him with a description of the job duties he performed as well as the physical nature of each of those jobs. The ALJ could also reasonably conclude Dr. Gilbert's opinion Hafley sustained work-related cumulative trauma injuries to his knees, neck and lower back were premised upon the history received from Hafley regarding the type of work

he performed and physical exertion required in performing those job duties. Significantly, the ALJ did not solely rely upon Dr. Gilbert's report in finding Hafley sustained cumulative trauma injuries due to his employment with Trane for 38.5 years performing strenuous manual labor. The ALJ cited to Hafley's testimony regarding his job duties including repetitive pulling and stacking parts weighing up to 50 pounds. He noted Hafley explained that although he worked in different jobs over the many years, none of them would be considered light duty and most of them required standing most of the day. Hafley's testimony combined with Dr. Gilbert's opinions, constitute substantial evidence supporting the ALJ's determination Hafley sustained work-related injuries to his knees, back, and shoulders.

We find nothing in the record indicating Dr. Gilbert had an inaccurate understanding of Hafley's job duties. Trane's argument that Dr. Gilbert had an inaccurate understanding of Hafley's work is unaccompanied by a reference to the specific evidence which supports its argument. Further, the fact Dr. Gilbert did not provide a detailed explanation supporting his opinion the injuries are work-related merely went to the credibility of his opinions and not the admissibility. Dr. Gilbert's opinions, though succinct, qualify as substantial evidence sufficiently supporting the ALJ's finding concerning the cause of the injuries. While the contrary opinions pertaining to causation expressed by Drs. Kakel and Primm [Trane's experts] may have been articulated in greater detail, such testimony represented nothing more than conflicting evidence compelling no particular outcome. Copar, Inc. v. Rogers, 127 S.W.3d 554 (Ky. 2003). Likewise, Dr. Gilbert's lack of specificity in explaining his expert opinion regarding causation merely went to the weight and credibility to be afforded his testimony, which was a matter to be decided exclusively within the ALJ's province as fact-finder. Paramount Foods, Inc. v. Burkhardt, 695 S.W.2d 418 (Ky. 1985).

-6-

Hence, we find no error in the ALJ's reliance upon Dr. Gilbert's opinions.

Similarly, Hafley's testimony that none of his treating physicians linked the problems with his knees, neck, and lower back to his work at Trane is something the ALJ within his discretion may attribute significance. However, the ALJ enjoys the discretion to ignore that fact in light of the remaining record and this Board has no authority to invade his discretion.

We also find no merit in Trane's assertion the ALJ failed to review the videotape depicting Hafley's duties in the stockroom. Although the ALJ failed to reference the videotape, Trane did not request additional findings of fact or a more explicit ruling concerning this omission in its Petition for Reconsideration. Thus, the issue is not properly preserved for review by this Board. *See* Bullock v. Goodwill Coal Co., 214 S.W.3d 890, 893 (Ky. 2007) (failure to make statutorily-required findings of fact is a patent error which must be requested in a petition for reconsideration in order to preserve further judicial review).

After examination of the record, we believe Cepero [v. Fabricated Metals Corp., 132 S.W.3d 839, 840 (Ky. 2004)] is inapplicable in the case *sub judice*. Cepero, [] was an unusual case involving not only a complete failure to disclose but affirmative efforts by the employee to cover up a significant injury to the left knee only two and a half years prior to the alleged work-related injury to the same knee. The prior, non-work-related injury had left Cepero confined to a wheelchair for more than a month. The physician upon whom the ALJ relied in awarding benefits was not informed of this prior history by the employee and had no other apparent means of becoming so informed. Every physician who was adequately informed of this prior history opined Cepero's left knee impairment was not work-related but, instead, was attributable to the non-work-related injury

-7-

two and a half years previous. We find nothing akin to Cepero in the case *sub judice*.

Because the opinions of Dr. Gilbert and Hafley's testimony regarding the physical tasks he performed for Trane over 38.5 years constitute substantial evidence supporting the ALJ's determination Hafley sustained work-related cumulative trauma injuries to his neck, lower back, and knees, the ALJ's decision in that respect must be affirmed. Stated another way, because the ALJ's finding of work-related injuries to Hafley's knees, neck, and lower back are supported by substantial evidence, this Board has no authority to disturb the ALJ's determination. Special Fund v. Francis, supra.

Likewise, we find no error in the ALJ's determination Hafley is permanently totally occupationally disabled. As an initial matter, we note Trane does not assert the ALJ failed to conduct the five-step analysis required by City of Ashland v. Stumbo, 461 S.W.3d 392 (Ky. 2015). Rather, Trane complains that because Hafley retired without work restrictions and received minimal treatment he is not permanently totally disabled. Trane offers no evidentiary support for its assertion Hafley retired due to an impending plant closure. Hafley denied the well-advertised impending plant closure was the basis for his retirement explaining he could no longer physically perform the work at Trane. Within his discretion, the ALJ may accept Hafley's explanation for leaving Trane.
Trane also complains Hafley only took over-the-counter medication while working and never advised Trane personnel he was experiencing any physical problems during his employment with Trane. It contends the ALJ's analysis is deficient because he did not explain why Hafley is unable to continue performing his job in the supermarket area which is a sedentary job. In his report, Dr. Gilbert expressly stated Hafley's spinal pain, cervical and lumbar radiculopathies and bilateral knee pain and weakness preclude him from returning to work

at Trane. Although he rated Hafley as sedentary, he also stated Hafley was 100% occupationally disabled from any occupation. Apparently, the ALJ concluded Hafley's little use of medication and lack of physical complaints were of little import in comparison to Dr. Gilbert's opinions.

Moreover, in his May 7, 2020, IME report, as noted by Trane, Dr. Kakel concluded Hafley's diagnosed conditions did not comprise cumulative trauma injuries related to his employment at Trane. However, Dr. Kakel determined that, pursuant to the AMA Guides, Hafley's cervical condition merited an 8% impairment rating. Similarly, pursuant to the AMA Guides, he found Hafley's lumbar condition also merited an 8% impairment rating. Dr. Kakel assessed no impairment rating for Hafley's right knee condition but assessed an 8% impairment rating for the left knee condition. Regarding Hafley's ability to return to work at Trane, Dr. Kakel expressed the following opinion:

> No, it is my opinion he does not retain the physical capacity to return to the previous type of work he performed. He could work with permanent restrictions in a less strenuous type of job. He does have bilateral knee arthritis and degenerative disease of the cervical spine which are progressive and cause him pain and limitations.

The opinions of Drs. Gilbert and Kakel set forth herein constitute substantial evidence supporting the ALJ's finding Hafley is totally occupationally disabled. Both physicians were unequivocal in their opinions that Hafley was not capable of returning to his previous employment at Trane. Further, Dr. Gilbert concluded Hafley was totally occupationally disabled.

In conducting his analysis pursuant to the City of Ashland, supra, the ALJ noted the impairment ratings yielded disability ratings under KRS 342.730. Concerning the remaining elements of the analysis, relying upon Drs. Gilbert and Kakel, the ALJ concluded Hafley did not retain the physical ability to return to the job he held at the time of his injuries. In light of the opinions of Drs. Gilbert and Kakel, the ALJ was persuaded Hafley's age, education, and work experience made it unlikely he could "attain and retain light duty employment within his physical capabilities." Significant to the ALJ was the fact Hafley was 61-years-old, possessed a 10th grade education, and had worked most of his adult life for Trane performing a job to which Drs. Gilbert and Kakel opined he could not return. Therefore, based on all these factors, the ALJ concluded Hafley would not be able to find and maintain suitable employment in a competitive economy and was thus permanently totally disabled. We are unable to conclude the ALJ's determination is unsupported by the record.

Notably, during his deposition, Hafley identified the physical problems he currently experiences as a result of the problems with his neck, lower back, and knees and stated he was incapable of returning to his job at Trane. His testimony succinctly set forth his physical problems and why this prevented him from returning to his work at Trane. This testimony also constitutes substantial evidence supporting the ALJ's determination Hafley is permanently totally disabled.

In determining whether a particular worker is partially or totally occupationally disabled as defined by KRS 342.0011, in Ira A. Watson Dept. Store v. Hamilton, 34 S.W.3d 48, 51 (Ky. 2000), the Kentucky Supreme Court explained the analysis "requires a weighing of the evidence concerning whether the worker will be able to earn an income by providing services on a **regular and sustained** basis in a competitive economy." (Emphasis ours). The Supreme Court explained further:

An analysis of the factors set forth in KRS 342.0011(11)(b), (11)(c), and (34) clearly requires an individualized determination of what the worker is and is not able to do after recovering from the work injury. Consistent with *Osborne v. Johnson*, [432 S.W.2d 800 (Ky. 1968)], it necessarily includes a consideration of factors such as the worker's post-injury physical, emotional, intellectual, and vocational status and how those factors interact. It also includes a consideration of the likelihood that the particular worker would be able to find work consistently under normal employment conditions. A worker's ability to do so is affected by factors such as whether the individual will be able to work dependably and whether the worker's physical restrictions will interfere with vocational capabilities. The definition of "work" clearly contemplates that a worker is not required to be homebound in order to be found to be totally occupationally disabled. *See, Osborne v. Johnson, supra*, at 803.

…

A worker's testimony is competent evidence of his physical condition and of his ability to perform various activities both before and after being injured. *Hush v. Abrams*, Ky., 584 S.W.2d 48 (1979).

Id. at 51-52.

The Supreme Court reaffirmed this holding the next year in McNutt Construction/First General Services v. Scott, 40 S.W.3d 854, 860 (Ky. 2001). There, the Supreme Court stated:

-11-

An analysis of the factors set forth in KRS 342.0011(11)(b), (11)(c), and (34) clearly requires an individualized determination of what the worker is and is not able to do after recovering from the work injury. Consistent with *Osborne v. Johnson, supra*, it necessarily includes a consideration of factors such as the worker's post-injury physical, emotional, intellectual, and vocational status and how those factors interact. It also includes a consideration of the likelihood that the particular worker would be able to find work **consistently** under normal employment conditions. A worker's ability to do so is affected by factors such as whether the individual will be **dependable** and whether his physiological restrictions prohibit him from using the skills which are **within his individual vocational capabilities**. The definition of "work" clearly contemplates that a worker is not required to be homebound in order to be found to be totally occupationally disabled. *See, Osborne v. Johnson, supra*, at 803. (Emphasis ours).

. . .

It is among the functions of the ALJ to translate the lay and medical evidence into a finding of occupational disability. Although the ALJ must necessarily consider the worker's medical condition when determining the extent of his occupational disability at a particular point in time, the ALJ is not required to rely upon the vocational opinions of either the medical experts or the vocational experts. *See, Eaton Axle Corp. v. Nally*, Ky., 688 S.W.2d 334 (1985); *Seventh Street Road Tobacco*

*Warehouse v. Stillwell*, Ky., 550 S.W.2d 469 (1976). A worker's testimony is competent evidence of his physical condition and of his ability to perform various activities both before and after being injured. *Hush v. Abrams*, Ky., 584 S.W.2d 48 (1979).

Here, the ALJ stated he considered Hafley's age, 61, education, and the fact that in the last 38.5 years he had worked solely for Trane. Accordingly, these factors caused the ALJ to conclude Hafley was incapable of sedentary employment in another field. Consequently, because of his advanced age, lack of a high school diploma, and previous work experience, the ALJ concluded Hafley was not able to obtain physically suitable employment in a competitive economy. Those findings by the ALJ are supported by the opinions of Dr. Gilbert, Hafley's testimony, and to some extent, Dr. Kakel's opinions.

As noted by the Supreme Court, the facts of each claim involve an individualized determination of whether an injured worker will be able to earn income on a regular and sustained basis in a competitive economy. Here, the ALJ was presented with a worker who had engaged in strenuous work for one employer for 38.5 years. Drs. Gilbert and Kakel agreed Hafley could not return to work at Trane. Further, Dr. Gilbert opined Hafley was totally occupationally disabled. Thus, the ALJ's findings are supported by the record and we may not disturb them.

Trane's assertion aside, the ALJ was not required to resolve what it perceived as the discrepancy of how Hafley was able to perform work without restrictions until October 21, 2018. Rather, the ALJ was free to accept Hafley's testimony he was physically unable to work after that date. The fact Hafley's treating physicians assigned no work restrictions while he was

-13-

employed by Trane is a fact the ALJ may or may not consider.

Finally, we find nothing in the record indicating Hafley worked in a sedentary supermarket job. Rather, his testimony establishes he worked in the stockroom for the last twenty years which Hafley identified as strenuous manual labor. He provided a description of the nature of his work in the stockroom and that testimony was not rebutted by Trane.

In conclusion, because substantial evidence supports the ALJ's determinations Hafley sustained cumulative trauma work-related injuries to his knees, low back, and neck and is permanently totally occupationally disabled, we are without authority to disturb his decision on appeal. Special Fund v. Francis, supra.

As noted, we discern no error with the Board's disposition of this matter. Accordingly, we AFFIRM.

ALL CONCUR.

BRIEF FOR APPELLANT:

Donald J. Niehaus
W. Clayton Stone, II[2]
Lexington, Kentucky

BRIEF FOR APPELLEE TOMMY HAFLEY:

W. Gerald Vanover
London, Kentucky

---

[2] Subsequent to briefing in this matter, Appellant filed a notice of substitution of counsel substituting Donald J. Niehaus for W. Clayton Stone, II. However, Mr. Stone appears on Appellant's brief.