Ada CARTE, Appellant,

v.

LORETTO MOTHERHOUSE INFIRMARY; Hon. W. Bruce Cowden, Jr., Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 1999–CA–002059–WC.

Court of Appeals of Kentucky.

May 19, 2000.

Ben T. Haydon, Jr., Thomas A. Dockter, Bardstown, for Appellant.

Brian T. Gannon, Louisville, for Appellee, Loretto Motherhouse Infirmary.

Before: HUDDLESTON, JOHNSON and KNOPF, Judges.

1. *See Western Baptist Hospital v. Kelly,* Ky., 827 S.W.2d 685 (1992).

OPINION

JOHNSON, Judge:

Ada Carte appeals from an opinion of the Workers' Compensation Board which affirmed the findings of the Administrative Law Judge that Carte is less than totally disabled and that she retains the physical capacity to return to the type of work she performed at the time of her injury. After reviewing the record and the Board's opinion, we are unable to conclude that the Board has committed an error in construing the law or in assessing the evidence and thus, we affirm.[1]

Carte is a fifty-year-old licensed practical nurse who worked as a nurse's aide for the appellee, Loretto Motherhouse Infirmary, a nursing home for elderly nuns, for eleven years between 1986 and the date of her injury, June 26, 1997. Carte's primary duties included making beds, lifting patients, transporting patients from their beds to chairs, and bathing, dressing and feeding the patients. In preparing to feed a patient on the day of her injury, Carte positioned a chair for herself at the patient's bedside, picked up a tray of food, and started to sit down when the patient accidently moved the chair out from under her. Carte fell, injuring her back, neck, left hand and left arm. She felt and heard a popping noise in her upper back and was immediately seen by a nurse on the staff and was sent home. She has not worked since that day.

Carte had a host of medical problems prior to this incident. She had undergone a hysterectomy in 1981, thyroid surgery in 1986 and surgery to have two heart valves replaced in 1996. She also had a history of pneumonia and ulcers and upper back and neck problems. In fact, she was undergoing physical therapy for neck pain at the time of the fall at Loretto. Consequently, the main contested issue in her claim for workers' compensation benefits was whether her current back and neck problems were due to the fall at work or attrib-

utable to prior injuries. Other issues litigated before the ALJ included the amount, if any, of pre-existing active disability, and the extent and duration of Carte's disability.

After outlining the various and conflicting opinions of the doctors and vocational experts who testified, the ALJ determined that Carte had sustained a compensable injury as a result of the June 1997 incident at work. He further determined that she had a 15% occupational disability, 30% of which he attributed to a pre-existing active disability. After applying the 1.25 multiplier set forth in KRS 342.730(1)(b), he awarded Carte benefits, based on a 13.13% permanent partial disability, of $30.90 per week for 425 weeks. The ALJ rejected Carte's claim that she was entitled to have her award enhanced by the 1.5 multiplier provided in KRS 342.730(1)(c)1.

In its review, the Board unanimously rejected Carte's claim that the evidence compelled a determination that she was totally disabled. However, the Board was split on the issue of whether the ALJ erred in finding that she retains the physical capacity to return to the type of work she performed at Loretto at the time of the injury. This finding by the ALJ deprived Carte of the additional 1.5 multiplier contained in KRS 342.730(1)(c)1. This statute reads as follows:

> If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be one and one-half (1½) times the amount otherwise determined under paragraph (b) of this subsection, but this provision shall not be construed so as to extend the duration of payments.

The two Board members that were in the majority determined that the evidence sufficiently supported the ALJ's finding that Carte could still work as a nurse's aide, and concluded that he did not err in refusing to apply the 1.5 multiplier. This petition for review followed.

The only issue Carte has raised in her petition for review concerns the Board's affirmance of the ALJ's finding that she retains the physical capacity to return to the type of work she performed at Loretto at the time of her injury. It is not disputed that Loretto refused to re-hire Carte after her 1997 injury. Carte testified that she attempted to obtain re-employment at Loretto, but that her former employer could not "meet the restrictions." The restrictions to which Carte referred included no lifting over 5 pounds, no pushing or pulling over 10 pounds, no repetitive bending, no lifting or overhead work, and no standing or walking for long periods of time. These restrictions were imposed on Carte by Dr. David A. Petruska, Carte's treating physician, a neurosurgeon, and concurred in by Dr. Vickie Whobrey, an independent medical examiner who assessed Carte in February 1998. Although the ALJ had accepted Dr. Whobrey's opinions regarding causation of Carte's neck and low back pain, the degree of Carte's impairment, and the amount of pre-existing impairment, he rejected Dr. Whobrey's opinion concerning the restrictions that should be placed on Carte and her opinion that Carte was unable to perform the type of work she had performed at Loretto. Instead, the ALJ relied on the opinions of two orthopedic surgeons hired by the employer, Dr. Phillip Tibbs and Dr. Bart Goldman, that no permanent restrictions needed to be placed on Carte.

As the Board held, where the evidence is conflicting, the ALJ is free to pick and choose "whom and what to believe."[2] Confronted with this standard of review, Carte argues that she was entitled to the application of the 1.5 multiplier as a matter of law based on Loretto's failure to re-hire her after her injury. She insists that if she did retain a capacity to perform her pre-injury job, "[Loretto] would have accepted her back when she presented her-

---

**2.** *See Pruitt v. Bugg Brothers,* Ky., 547 S.W.2d  123 (1977).

self to it for re-employment." Further, she argues that Loretto's refusal to re-hire her must be treated as an "admission against interest." In addressing these arguments, the Board reasoned that

> [t]he fact that Loretto did not have any positions available that met the restrictions imposed by Dr. Whobrey is of no particular significance since the ALJ determined that Dr. Whobrey's restrictions were not the most accurate. This evidence [that Carte was not re-hired by Loretto] does not compel a finding that Carte does not retain the physical capacity to return to the type of work that she performed at the time of her injury.

Carte's position in regard to this issue was embraced by one Board member. In his dissenting opinion, Board Member Stanley expressed the belief that Loretto's refusal to re-hire Carte "should constitute compelling evidence sufficient to justify a partial reversal of the ALJ's decision." He further reasoned as follows:

> KRS 342.710(1) specifically states that one of the primary purposes of Kentucky's Workers' Compensation Act shall be the restoration of injured workers to gainful employment. Additionally, the Act requires that preference shall be given to returning the employee to employment with the same employer or to the same or similar employment. Given these express objectives, I believe that part of the Legislature's intended policy behind KRS 342.730[ (1) ](c) is to discourage employers from discriminating against employees who file claims and to encourage employers to put injured workers back to work quickly. I believe the Act imposes a duty on the employer, whenever possible, to allow injured workers to resume their normal and customary job duties at the same or higher wages. If a claimant is denied the opportunity to keep her old job due to the effects of her injuries, KRS 342.730(1)(c)1, in my opinion, should automatically kick in.

> ... I believe that Loretto's refusal to allow Carte to return to her regular job duties must be viewed as evidence that is so overwhelming, no reasonable person could reach the same conclusion as the ALJ with regard to petitioner's physical capacity to return to the type of work she performed at the time of her injury. *REO Mechanical v. Barnes*, Ky. App., 691 S.W.2d 224 (1985). The defacto truth that an employer refuses to rehire an employee for work-related medical reasons must take precedence over a legal fiction created by an Arbitrator or ALJ regarding an employee's employability post injury. Loretto's refusal to offer Carte employment directly contradicts the intended design of the Legislature as reflected in its 1996 amendments to Section 730. Just as an employee should not be rewarded for feigning inability to work, neither should Loretto be rewarded simply because Drs. Goldman and Tibbs saw no reason why Carte would be unable to return to the sort of work she previously performed.

> Given the reality presently facing Carte, I believe equity compels application of KRS 342.730(1)(c)1 by the ALJ.

There is no question that the purpose of the statutory scheme for calculating permanent partial disability benefits in KRS 342.730(1)(c), a scheme which enhances benefits by 1.5 times the award in the case of a worker who does not retain the physical capacity to return to the type of work the employee performed at the time of injury, and which reduces an award by ½ if the "employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury,"[3] is similar to the purposes for the provisions relating to rehabilitation benefits in KRS 342.710. The shared purpose of both sections of the workers' compensation scheme is to motivate workers to return to work, and to encourage employ-

---

3. KRS 342.730(1)(c)2.

**126**

ers to retain injured workers at wages equal to or greater than those earned before the injury.[4] However, the employer's beliefs about its employee's post-injury physical capabilities do not constitute the litmus test for determining the employee's rights to benefits under either statutory provision.

■ The gist of Board Member Stanley's dissenting opinion is that an employer should be estopped from objecting to the application of the 1.5 multiplier provided in KRS 342.730(1)(c)1, if the employer has refused to re-hire the injured worker at the same or similar job as the worker was performing at the time of the injury, and that such refusal should trigger the application of the multiplier as a matter of law. We agree that an employer should not be heard to argue a position before the factfinder that is inconsistent with its actual treatment of the claimant. However, the evidence submitted in this case does not reveal any such inconsistency. While Carte testified that Loretto would not accommodate the restrictions imposed by her treating physician, there was no evidence that Loretto believed that Carte was physically unable to perform the work, or that Loretto refused to re-hire Carte without restrictions or with restrictions that were consistent with the medical opinions it was relying on.

■ Even if there were evidence that Loretto had refused to allow Carte to re-

turn to her former job without restrictions, such evidence, while bearing on the issue, would not conclusively establish Carte's entitlement to the multiplier. In fact, it would be rare, we believe, that the employer's assessment of its employee's post-injury physical abilities would be given as much weight as that of a medical or vocational expert. Further, if Member Stanley's interpretation of the statute were taken to its logical conclusion, an employer's mere offer to return its employee to his or her former job would act to conclusively deny its injured employee the benefit of the 1.5 multiplier, regardless of the worker's *actual retained capacity to perform the same type of work*. Clearly, the issue of a claimant's retained capacity and the application of the 1.5 multiplier is, as a majority of the Board recognized, one of fact based on the evidence, both lay and medical, and is not solely determined, as a matter of law, by the employer's decision whether or not to re-hire its injured employee.

Accordingly, the opinion of the Workers' Compensation Board is affirmed.

ALL CONCUR.

---

4. *See Wilson v. SKW Alloys, Inc.,* Ky.App., 893 S.W.2d 800 (1995).