# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: FEBRUARY 19, 2026
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0544-WC

INTERNATIONAL AUTOMOTIVE
COMPONENTS

APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
NO. 2024-CA-0145
WORKERS' COMPENSATION BOARD
NO. WC-22-00987

TERESA CORPUS; HONORABLE GRANT S.
ROARK, ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION BOARD

APPELLEES

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

International Automotive Components (IAC) appeals as a matter of right from the decision of the Court of Appeals affirming the Workers' Compensation Board, which upheld the decision of the Administrative Law Judge (ALJ) to award Teresa Corpus permanent partial disability (PPD) benefits for a cumulative work-related injury to Corpus's neck and feet, with the three-times multiplier.

IAC argues that the ALJ was clearly erroneous in applying the three-times multiplier where there was no substantial evidence to support the ALJ's conclusion that Corpus could not return to her previous employment. We conclude that the ALJ properly acted within its discretion, considering all of the evidence, in determining that Corpus was entitled to the multiplier.

## I. FACTUAL AND LEGAL BACKGROUND

Corpus worked for IAC as an assembly line worker from September 20, 2000, until June 26, 2021, when she was laid off because of IAC's Madisonville, Kentucky, plant ceasing operations. Corpus was sixty-four years old at that time. On August 25, 2022, she filed an application for benefits for cumulative injuries to her cervical spine, lumbar spine, and bilateral feet.

Dr. James Rushing reviewed Corpus's medical records and conducted a physical examination. He documented abnormal findings for her neck, including positive cervical flexion and extension, lateral flexion, and lateral rotation. He noted bilateral arch pain of her feet, and that "walking is bad." He diagnosed her with cervical degenerative joint disease, bilateral foot osteoarthritis, and lumbar degenerative joint disease, attributing these conditions to her work activities and that continuation of those job duties would have adverse health effects.

Medical records from Corpus's podiatrist, Dr. Walker Estes, indicated that she saw him in 2017 for pain in her feet and he prescribed her Meloxicam and recommended arch support insoles. At a follow up visit, she reported the insoles provided some relief and she continued to take the Meloxicam.

A record from Owensboro Health Multistate, dated May 14, 2019, indicated Corpus had foot and neck pain from standing on concrete for long periods of time incidental to her factory work. In July 2020, Corpus reported worsening arthritis pain and was prescribed ibuprofen.

In 2019, Corpus began treatment for her neck with a doctor at Bennet Family Chiropractic care, with treatment ongoing through the time of her testimony. Records memorialized that she found some relief from the stiffness in her neck from this treatment.

On October 11, 2022, Dr. John Gilbert performed an independent medical examination (IME) of Corpus. He performed a physical examination of her and reviewed her medical records and history. Dr. Gilbert diagnosed Corpus with cervical severe degenerative joint disease with muscle spasm, lumbar degenerative joint disease with muscle spasm, and "bilateral foot pain with reproducible weakness in plantar and dorsiflexion at 4/5 due to 21 years of factory work." He assigned a 33% whole-person impairment to her. As to her capacity to return to the same type of work she was performing at the time of the injury, Dr. Gilbert indicated that Corpus could, noting "[d]espite her problems, she has had [sic] pain threshold and since she is single she said she would continue to work there had it not closed." He did not place restrictions on Corpus in her current job because it was lighter duty than her prior factory work.

On December 12, 2022, Dr. Jeffrey Hazelwood performed an IME of Corpus at IAC's request. Based on his physical examination and review of her medical records, he diagnosed her with: bilateral foot pain consistent with osteoarthritis more likely than not, indicating "[s]he has just pain in her feet with prolonged standing[;]" cervical pain, non-specific, more likely than not due to rather significant cervical spine degenerative disc disease and spondylosis;

3

and minimal low back pain, mostly stiffness. Dr. Hazelwood outlined his view that these problems could not be found related to her work history and was most likely related to her age. Dr. Hazelwood disagreed with Dr. Gilbert's findings and opined Corpus had no work-related impairment.

Corpus testified she performed assembly line work putting together automobile headliners, with duties including machine operation where she used a large industrial hot glue gun to affix wire and metal harnesses. She described the glue gun and its attached large glue-filled hoses as being of substantial weight. She described the repetitive work as requiring her to look downward and keep her neck bent for long periods of time while working over tables that were not a well-suited height for her, which required her to strain and stretch to reach the areas to apply the glue, as she maneuvered around machinery. She attributed these aspects of the job as the cause of her neck and back injuries.

Corpus also testified she had to stand during her entire eight to twelve-hour shift on concrete floors, while working five to seven days a week. She also testified about frequent heavy lifting and carrying of automobile headliners and boxes. She attributed her bilateral foot injuries to these long hours of standing.

As to her ability to return to similar employment after she was laid off, Corpus described having to turn down similar factory work because she did not believe she could tolerate long periods of standing. She testified she was working part-time in a sandwich shop twenty to twenty-five hours a week, filling orders and making sandwiches, a job at which she stood but could take

4

breaks as necessary, but which still sometimes causes her increased pain in the arches of her feet. She indicated she planned to keep working this job as long as she could but acknowledged that she could have to scale back her work time.

In an Opinion, Order & Award, dated May 22, 2023, the ALJ found Corpus's cumulative trauma for her neck and bilateral foot injuries to be compensable, but dismissed her claim for lumbar injury. The ALJ relied upon Dr. Gilbert's opinions regarding impairment for Corpus's compensable injuries:

> Having already accepted Dr. Gilbert's opinions as to [Corpus's] neck and bilateral feet claims and rejected Dr. Hazelwood's opinions on those conditions, the ALJ is similarly persuaded by Dr. Gilbert's impairment ratings . . . . [Dr. Hazelwood] indicated he was critical of Dr. Gilbert's impairment rating calculations, but did not offer any alternative impairment ratings other than to say he believed [Corpus] had no impairment ratings . . . because [Corpus] had no loss of strength in her feet according to his examination. However, those conclusions are inconsistent with [Corpus's] credible presentation of her symptoms at the hearing and with Dr. Hazelwood's own comments that [Corpus] showed no abnormal or undue pain behaviors. For these reasons, it is determined [Corpus] has a 12% impairment for each foot and an 8% impairment for her neck condition which, using the combined values chart, results in a total whole person impairment of 31%.
> . . . .
>
> [T]he ALJ finds Dr. Gilbert's opinions more persuasive with respect to the neck and bilateral feet. Consistent with [Corpus's] testimony, Dr. Gilbert pointed out that [Corpus's] many years of prolonged standing every day for [IAC] led to the injuries to [Corpus's] neck and feet. For his part, Dr. Hazelwood essentially explained he does not believe work activities ever cause cumulative trauma injuries to the neck or feet and found nothing in particular about [Corpus's] job duties to persuade him [that] her conditions were caused by anything other than genetics and the natural aging process. Yet [Corpus] credibly testified she had to stand all day long and perform strenuous activities for over 20 years with [IAC]. Her description of her job activities leads the ALJ to credit Dr. Gilbert's opinions with respect to [Corpus's] neck and feet. It is

5

therefore determined [Corpus] suffered compensable, cumulative trauma injuries to her neck and bilateral feet manifesting as of June 26, 2021.

As to determining whether the three-times multiplier should apply, after acknowledging that both Dr. Hazelwood and Dr. Gilbert indicated Corpus could return to her prior work, and she continued to work at the sandwich shop, the ALJ nevertheless found:

> [Corpus's] testimony makes clear that she continued working with significant pain in her feet and neck. Moreover, the ALJ can infer from Dr. Gilbert's answer on the Form 107 that he based his lack of restrictions and answer as to [Corpus's] physical ability on her reporting to him she would have continued working for [IAC] had it not shut down.
>
> However, [Corpus's] credible hearing testimony makes clear she would have been in significant pain had she continued to do the work and she credibly explained she did not pursue a similar factory employment opportunity because of the pain in her feet and neck. Based on [Corpus's] credible hearing testimony, it is determined [Corpus] does not retain the physical ability to return to the job she held the time of her injury, thereby entitling her to application of the 3x multiplier in [Kentucky Revised Statutes (KRS)] 342.730(1)(c)(1).

IAC filed a motion to reconsider, which the ALJ denied. IAC then appealed to the Board, which affirmed the awards, explaining:

> The ALJ correctly analyzed the evidence, and properly exercised his discretion in determining causation and entitlement to the three-multiplier. He enumerated the reasons why he believed Corpus's testimony regarding her physical limitations and inability to return to her pre-injury work, as well as his basis for relying on Dr. Gilbert's causation opinion, which is squarely within his purview.

Regarding the three-times multiplier, the Board specifically concluded:

> Kentucky Courts have consistently held that when the application of the multipliers contained in KRS 342.730(1)(c)1 is at issue, the ALJ may rely on the claimant's self-assessment of her ability to

6

perform her prior work. *Ira A Watson Department Store v. Hamilton*, 34 S.W.3d 48 (Ky. 2000); *Carte v. Loretto Motherhouse Infirmary*, 19 S.W.3d 122 (Ky. App. 2000); *Hush v. Abrams*, 584 S.W.2d 48 (Ky. 1979).

IAC appealed, arguing application of the three-times multiplier was inappropriate and that there was not substantial evidence to establish that the injury to Corpus's feet was caused by her work. The Court of Appeals affirmed the Board. *Int'l Auto. Components v. Corpus*, 2024-CA-0145-WC, 2024 WL 4644767, at *5-7 (Ky. App. Nov. 1, 2024) (unpublished).

The Court of Appeals rejected IAC's attempt to distinguish the precedent the Board cited in support of the ALJ's application of the three-times multiplier as inapplicable because none of those cases cited involved a cumulative trauma injury, explaining:

> IAC cites to no specific authority for this restriction; it simply recites factual scenarios, particularly regarding the presence of an acute injury, underlying the cited cases. We do not read this precedent, affirming an ALJ's authority to rely upon a claimant's testimony regarding ability to perform her prior work, as being confined to certain categories of injury. "Although causation and the date of MMI are medical questions, a worker's testimony may provide adequate support for a finding concerning his inability to work at a particular point in time." *Arnold v. Toyota Motor Mfg.*, 375 S.W.3d 56, 61 (Ky. 2012) (citing *Hush*, 584 S.W.2d 48; *Carte v. Loretto Motherhouse Infirmary*, 19 S.W.3d 122 (Ky. App. 2000)).

*Id.* at *5.

The Court of Appeals therefore concluded that Corpus's testimony as to her inability to return to similar employment was sufficient to support the three-times multiplier:

> As the Board held and precedent supports, a claimant's testimony is sufficient in this instance to support the ALJ's finding [that]

7

Corpus was no longer able to perform the work she did at IAC. The ALJ made clear the reasoning for crediting Corpus's testimony. The ALJ's finding [that] this was not wholly inconsistent with the report of Dr. Gilbert, despite Dr. Gilbert indicating Corpus was still able to perform her old job, is not unreasonable and is supported by evidence on the record. Accordingly, we affirm the Board's opinion on this issue.

*Id.* at *6.

## II. STANDARD OF REVIEW

"Review from an ALJ's decision on a workers' compensation claim proceeds on three levels." *Lab'y Corp. of Am. v. Smith*, 701 S.W.3d 228, 233 (Ky. 2024). Pursuant to KRS 342.285, the Board performs the first level of review to correct error, "though without the power of constitutional review." *Lexington Fayette Urb. Cnty. Gov't v. Gosper*, 671 S.W.3d 184, 199 (Ky. 2023). Pursuant to KRS 342.290, the Court of Appeals conducts the second level of review from the decisions of the Board for the purpose of correcting it where "the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). Finally, our Court provides matter of right review pursuant to Section 115 of the Kentucky Constitution. *Vessels by Vessels v. Brown-Forman Distillers Corp.*, 793 S.W.2d 795, 798 (Ky. 1990).

Our review is designed to address "new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *W. Baptist*, 827 S.W.2d at 688.

8

Under this review, we "will not simply 'third guess' the decisions of the Board and the Court of Appeals upon the same evidence." *Id.*

"Our standard of review in workers' compensation claims differs depending on whether we are reviewing questions of law or questions of fact." *Ford Motor Co. v. Jobe,* 544 S.W.3d 628, 631–32 (Ky. 2018). Regarding questions of fact, "[t]he ALJ as fact finder has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence." *LKLP CAC Inc. v. Fleming,* 520 S.W.3d 382, 386 (Ky. 2017).

> KRS 342.285 gives the ALJ the sole discretion to determine the quality, character, and substance of evidence. As fact-finder, an ALJ may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same party's total proof. KRS 342.285(2) and KRS 342.290 limit administrative and judicial review of an ALJ's decision to determining whether the ALJ "acted without or in excess of his powers;" whether the decision "was procured by fraud;" or whether the decision was erroneous as a matter of law. Legal errors would include whether the ALJ misapplied Chapter 342 to the facts; made a clearly erroneous finding of fact; rendered an arbitrary or capricious decision; or committed an abuse of discretion.

*Abel Verdon Const. v. Rivera,* 348 S.W.3d 749, 753-54 (Ky. 2011) (footnotes omitted).

As to decisions regarding questions of law, or the application of the law to the facts, we owe the ALJ no deference, and our standard of review is *de novo. Lab'y Corp. of Am.,* 701 S.W.3d at 233.

"Where the party with the burden of proof was successful before the ALJ, the issue on appeal is whether substantial evidence supported the ALJ's conclusion." *Whittaker v. Rowland,* 998 S.W.2d 479, 481 (Ky. 1999).

9

"Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B.F. Goodrich Chem. Co.*, 474 S.W.2d 367 (Ky. 1971).

### III. ANALYSIS

IAC's sole argument on appeal is that Corpus is not entitled to the three-times multiplier because she has no restrictions from any physician and no expert found that she was unable to return to her prior work. IAC emphasizes that no physician checked the box "No" in response to the question "Does the plaintiff/employee retain the physical capacity to return to the type of work performed at the time of Injury?" and the fact that when Corpus testified, she admitted that she was not under any physical restrictions from any doctor currently.

KRS 342.730(1)(c)1 provides: "If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three (3) times the amount otherwise determined[.]" As explained in *Apple Valley Sanitation, Inc. v. Stambaugh*, 645 S.W.3d 434, 438–39 (Ky. 2022), "[t]his provision is intended to compensate an injured worker who has a permanent alteration to his ability to labor and earn money due to his injury" and is addressed to "whether an employee has the physical capacity *at the time of the benefits hearing* to perform the type of work performed pre-injury."

10

As we stated unequivocally in *Ira A. Watson Dep't. Store*, 34 S.W.3d at 52:

> Although the ALJ must necessarily consider the worker's medical condition when determining the extent of his occupational disability at a particular point in time, the ALJ is not required to rely upon the vocational opinions of either the medical experts or the vocational experts. A worker's testimony is competent evidence of his physical condition and of his ability to perform various activities both before and after being injured.

(Internal citations omitted).

While it may not be physically impossible for an employee to continue to perform the same employment for a limited time after becoming permanently partially disabled, that does not foreclose that employee from qualifying for the multiplier. *Apple Valley Sanitation, Inc.*, 645 S.W.3d at 439-40.

In *Fawbush v. Gwinn*, 103 S.W.3d 5, 12 (Ky. 2003), an employee was temporarily able to be employed earning more money at the time of his injury, but such "post-injury work was done out of necessity, was outside his medical restrictions, and was possible only when he took more narcotic pain medication than prescribed." In consideration of the fact that "he was not likely to be able to maintain the employment indefinitely[,]" we were convinced that the ALJ acted reasonably in determining there was a permanent alteration in the worker's ability to earn money due to his injury, and therefore choosing to apply the three-times multiplier. *Id.*

"Even if a worker returns to the type of work, post-injury, that an ALJ has concluded she lacks the physical capacity to perform, such a worker can still qualify for the three-times multiplier, because that worker cannot

11

indefinitely continue to perform the same kind of work she performed before the injury." *Morgan v. Bluegrass Oakwood, Inc.*, 667 S.W.3d 34, 52-53 (Ky. App. 2019), *aff'd,* 2019-SC-0490-WC, 2021 WL 1679311 (Ky. Apr. 29, 2021) (unpublished). *See also Apple Valley Sanitation, Inc.*, 645 S.W.3d at 440 n.17 (noting unpublished Court of Appeals' decisions doing likewise).

Here, the ALJ could reasonably conclude that Corpus continued to work for IAC even after she had suffered PPD due to financial necessity even though she was dealing with overwhelming pain. This is reflected in Dr. Gilbert indicating that Corpus would have continued to work for IAC if the facility had not closed despite her problems because she was single, apparently meaning there was no one else available to support her financially.

It was appropriate for the ALJ to credit Corpus's testimony that she had not applied for other factory jobs because she did not think she could perform such work, and that she had taken a lower paying job with fewer hours which allowed her to rest as needed. Additionally, it was Corpus's condition at the time of the hearing that was key, and her condition could have worsened from that reflected in Dr. Gilbert's assessment in the interim between his examination and her testimony, as reflected in her indication that she was uncertain that she could continue in her current, less strenuous employment indefinitely. Therefore, the ALJ acted appropriately within his discretion in determining to apply the three-times multiplier.

12

# IV. CONCLUSION

We affirm the Court of Appeals. The Court of Appeals and the Board correctly applied the law by appropriately deferring to the ALJ's discretion in determining whether Corpus maintained the ability to return to the same type of work.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Donald C. Walton
Donald J. Niehaus
Walton Niehaus Law, PLLC

Whitney Lynn Lucas
Morgan & Akins PLLC

COUNSEL FOR APPELLEE:

McKinnley Morgan
Morgan, Collins, Yeast & Salyer


ADMINISTRATIVE LAW JUDGE:
Hon. Grant Stewart Roark


WORKERS' COMPENSATION BOARD:
Michael W. Alvey, Chairman